CHARLES T. CHERRY, *Receiver of the Capitol National Bank, of Guthrie, Oklahoma,* v. TERRITORY OF OKLAHOMA.

(Filed September 5, 1906.)

1. NATIONAL BANK—Receivership—Claim Against—Priority of—How Determined. One who deposits checks and drafts in a bank when it is in a failing condition, cannot secure a preference for the amount thereof over other creditors on the money in the bank at the time of its failure without tracing the proceeds of such checks and drafts, and showing that such proceeds are included in such cash.

2. SAME Where a bank is insolvent on the last two days that it transacts business, and receives deposits, and it affirmatively appears from the evidence that there was found in the bank when it closed its doors, $20,000 in cash, and that $12,857'39 was deposited on the last day on which it received deposits, in an action for a preference by one who deposited on the day before the last on which it received deposits, his recovery of a preference will be limited to the cash on hand less the deposits of the last day; there being no attempt to trace the identical money deposited into any other assets of the bank.

3. SAME—Presumption of Law. When a bank receives deposits of cash while insolvent, and fails without sufficient money on hand to pay back all of the deposits so received, the law will presume that the money was paid out by the bank in the order that it was received, and that the money on hand is the money of the last depositor, and so on back in the inverse order of the deposits as to time.

4. SAME—Money of Territory. When moneys of the territory are deposited by the territorial secretary in a bank that was insolvent, and it afterwards fails, and the territory is unable to trace the identical funds deposited, it should be confined to the general rules of law regarding presumptions of fact applied to other depositors; and when, under such rules, it is evident that the deposits of the last day on which the bank transacted business belong to other creditors, a preference will be denied the territory as to such deposits, even though no preference is claimed by those entitled thereto; and, under such circumstances it is immaterial whether or not the secretary had any authority for making such deposit.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before John L. Pancoast, Trial Judge.*

*Flynn & Ames,* for plaintiff in error.

*P. C. Simons,* and *Robberts & Curran* for defendant in error. .

Opinion of the court by

BURWELL, J.: William Grimes, as territorial secretary, deposited with the Capitol National Bank of Guthrie, on April 2, 1904, the sum of $12,397.00, which had come into his hands as insurance commissioner, and also $2,177.55, which belonged to the miscellaneous funds of his office, making in all a total deposit of $14,574.55. These funds were made up of $13,903.55 in cash and $671.00 in checks and drafts on other banks.

On April 4th, the bank closed its doors, and its assets were placed in the hands of a receiver. The territory asks that its claim for these deposits be preferred ahead of the other creditors of the bank. The trial court awarded a preference as prayed, and the receiver appealed.

Many points are discussed at length by the respective parties and many authorities cited. We shall, however avoid all unnecessary questions and confine ourselves to a consideration of those issues which are essential to a determination of the rights of the parties.

In the case of *Willoughby v. Weinberger,* (Okla.) 79 Pac. 777, this court considered a case involving the failure of this same bank, and awarded a preference as to the cash deposited by the suing party on the last day that the bank did business. However, the deposit sought to be recovered in this case was made on Saturday the 2nd day of April, 1904,

the last business day prior to the closing of the bank at 2:20 P. M., on April 4th.

The trial court found that the bank was in a failing condition when the deposit was made by Mr. Grimes, and in this finding we fully concur. Therefore, under all of the authorities, the bank was unauthorized to receive the deposit, and by so doing it committed a fraud against the depositor. But, has the territory any relief not open to the general depositors of the institution?

The deposit consisted of two different classes of items: First, checks and drafts; and second, cash. It is a fundamental rule of law that a depositor, in circumstances of this kind, must trace his property and show that the thing which he is seeking to recover is the identical property by him delivered to the bank, or that it is in equity his because his property paid for it. Certain inferences may be indulged in, but these inferences must be only those that are reasonable and such as would naturally follow from the facts proven. The checks and drafts were delivered to the bank, but there is no evidence as to what became of them. The only evidence regarding this issue is an agreement between the respective parties on the trial to the effect that there was on hand at the time the bank closed its doors a "large amount of notes, bills of exchange, credits and personal property, which, although insufficient to pay its obligations in full, were available to the extent of their value for such purpose, and that all such assets have passed into the hands of the receiver of the bank."

It is not contended that the particular checks and drafts deposited went into the hands of the receiver. Nor does the evidence show that the proceeds therefrom were received by him. Until this is shown the amount of the checks cannot

be allowed as a preferred claim. *Willoughby v. Weinberger,* (Okla.) 79 Pac. 777.

The total deposits made by checks, drafts and so forth, other than in cash, on April 2, amounted to over $59,000.00. The record affirmatively shows this state of facts and we do not see any good reason why all creditors depositing under similar conditions should not be treated alike.

It is true that the court will not go outside of the record in a particular case to inquire if a judgment which apparently ought to be rendered in it, will affect anyone else, but when the evidence in the particular case shows affirmatively that a party stands in the same position as others, as, for instance, in a receivership matter, and the court is passing upon the priority of claims, it should consider the effect of the particular judgment upon the other creditors similarly situated.

In this case the plaintiff is asking for a priority, and the burden is upon it to establish its right to payment of its claim ahead of others by a preponderance of the evidence. The law presumes that all creditors stand on an equality, and it will so treat them until a right to an exception is established. The trial of this case is not the trial of an isolated issue, but it is the trial of the rights of this claimant as against the rights of all of the other creditors of the bank, whose interests are in effect represented by the receiver. If, from the entire record, the court can see that, by granting a preference to this creditor, an injustice will be done to other creditors whose claims are equal in merit and in law, then the rights of all should be considered, and such judgment rendered as will afford an equal opportunity to obtain justice.

Measured by the rules suggested, what are the rights of the territory in this action? We find $20,000.00 in cash in the bank at the time of the failure. There were deposited on April 4, $12,857.39. The law presumes, in the absence of proof, that the first money received was the first money paid out, and that the last money deposited is the money on hand, reaching back in the inverse order of deposit until the cash is exhausted. The bank being in a failing condition, the creditor making the last deposit should be the first to be paid out of the cash on hand, if a preference is to be allowed on that ground alone.

The cash deposits of the last day should be first deducted from the $20,000 on hand when the bank closed. The territory is not entitled to any of such sum, as it was all deposited after the deposit was made by the territory, and it is immaterial whether the creditors who made these deposits claim a preference or not. So far as the record in this case is concerned, it shows that they are entitled to claim it, and that the territory, under the rule as stated, has no greater interest in the deposits of the last day than any other creditor.

It has been suggested that the record fails to show that the depositors of the last day on which the bank did business, claim any preference. What possible difference can that make? The territory does not pretend to trace the identical money deposited. It seeks to obtain a preference solely under the presumptions of law as applied to a particular state of facts. If we indulge in presumptions, the conclusion is reached that $12,857.39 of the $20,000 cash in the bank when its doors were closed, was not deposited by the territory. Not having been deposited by it, it should not be given any pref-

erence therefor. If those who are lawfully entitled to a preference for such sum do not claim it, then the $12,857.39 deposited on the last day should be placed with the general assets, and distributed to all of the creditors alike. If a portion of it be set apart as a preference, the residue should be so divided. As to such fund, the territory neither in equity or law has any greater claim than any other creditor.

After deducting the deposits for the last day, there would, however, still remain $7,142.61 which was deposited on the same day that the territory made the deposit in question, and may have been its money. To this fund the territory is entitled to a preference, subject to the claims of other depositors on the same day. The evidence fails to show when the respective deposits were made on April the second. Therefore, the court should have allowed the claim for the cash deposit as a preferred claim on the deposits of that day. If the other depositors on April 2, 1904, claim a preference, and the evidence fails to establish the order of the deposits in point of time, then the territory would only be entitled to a preference to its *pro rata* share of the $7,142.61. The evidence shows clearly that the bank had not only exhausted all of its own cash, but that a large part of the cash deposited on April second was paid out by its officers in violation of the rights of its depositors. We fully understand that a receiver of the assets of a national bank is not an officer of the court, but is an agent of the United States. *In re Chetwood,* 165 U. S. 458. Still, when the entire evidence in a case discloses that there are other suits pending which have for their object the application of the particular moneys in question to the payment of claims held by the plaintiffs in such suits, the court should grant the proper relief in the

particular case in a way that will not bar the other claimants from their just share of such funds, should they succeed in establishing a right thereto.

In discussing this case thus far we have regarded the deposit in question in the same light, and as measured by the same rules that would obtain if it had been made by an individual instead of the territory. It is urged by the appellee that as the fund was a territorial fund, the territorial secretary had no authority to deposit it, and by reason of that fact, the territory should have a preference over all other creditors. This contention is without merit, and cannot withstand scrutiny and analysis.

The case of *Thompson v. The Territory,* 10 Okla. 489, is commented upon by the respective parties, and each claims some advantage by the rules enunciated therein. We are familiar with the decision in the Thompson case, and, with all due respect for the learned attorneys who have cited and commented upon it, we cannot agree that it has any important bearing in this case. In the Thompson case it was decided that a territorial treasurer might deposit territorial funds in a bank for safe keeping, provided they remain at all time under his control and subject to his check. It appears to us of little consequence in this case whether the secretary had the authority to make the deposit in question or not. If he had the authority to make it, then the territory must stand on the same footing as an individual in the same circumstances. If, in law, he had no right to make the deposit, then the territory would not, by reason thereof, obtain an advantage over those who deposited their own funds at the same time, and without knowledge of the insolvency of the bank, unless it is able to trace its own funds, which it does

not pretend to do. The fraud committed upon the individual depositors by accepting their money when the bank was insolvent, was just as great as that committed against the territory in accepting its money, even though the territorial secretary had no authority to make it. (As to the authority of the secretary to make the deposit, we express no opinion.) In neither case had the bank any right to accept the deposit, and its officers were guilty of fraud in so doing: Therefore, from a legal standpoint, none of the deposits made on the second day of April became a part of the assets of the bank, and so far as traceable, they may be recovered by those making them.

The court is of the opinion that the territory should be denied a preference as to the $671.00 deposited in checks and drafts on April 2nd, but that such sum should be allowed as an ordinary claim, and that it should be allowed a preference for the $13,903.55 deposited in cash on that day, to the amount of $7,142.61, subject to any other preference claims which may be established against said funds by other depositors of April 2nd, 1904. It is possible that on another trial the evidence may show that some of the persons who deposited subsequent to April 2nd, 1904, and during the time that the bank was in a failing condition, had been paid the amount of their respective deposits prior to and during the time that the bank was in a failing condition, the time the bank closed its doors, thereby increasing the amount of the fund in which the territory may participate as a preferred claimant; therefore, the judgment will be reversed, and a new trial granted at the cost of the territory.

Pancoast, J., who presided in the court below, not sitting; Burford, C. J., not sitting; all of the other Justices concurring.