**APPLE et al., Adm'rs, v. HERT.**

No. 14804—Opinion Filed Jan. 18, 1927.

(Syllabus.)

**Trusts—Death of Trustee—Trust Fund Unidentified—Remedy of Beneficiary as General Creditor.**

Tracing trust funds into the hands of the trustee is not alone sufficient to impress a trust upon the assets of such trustee found in the hands of the administrator of his estate after the death of said trustee. Such diverted funds must be traced in some form into the hands of the administrator. Otherwise, the sole remedy of the beneficiary is that of a general creditor.

Error from District Court, Carter County; Asa E. Walden, Judge.

Action by Sallie A. Hert against Frank L. Ketch, administrator of the estate of Jake L. Hamon, deceased, to establish a preferred claim in the sum of $17,000 against said estate. Judgment for plaintiff, and defendant appeals. S. A. Apple and Jake L. Hamon, Jr., as administrators of the estate of Jake L. Hamon, deceased, have since been substituted as plaintiffs in error. Reversed and remanded.

Fred R. Ellis and Wilson, Tomerlin & Threlkeld, for plaintiffs in error.

Dolman & Dyer, for defendant in error.

MASON, V. C. J. The defendant in error, Sallie A. Hert, hereinafter called plaintiff, brought suit in the district court of Carter county, Okla., against Frank L. Ketch, as administrator of the estate of Jake L. Hamon, deceased, to impress upon the general assets of said estate a trust to the extent of $17,000.

After the institution of the suit, Frank L. Ketch resigned as administrator of the Hamon estate and the cause thereafter proceeded to trial against Georgae Hamon Rohrer, who had been appointed administratrix of said estate to succeed Frank L. Ketch.

The facts sufficient to determine the issues involved are substantially as follows:

About July 10, 1920, Sallie A. Hert delivered into the hands of Jake L. Hamon the sum of $17,000, under an agreement with him that he would invest same for her in some good oil proposition. He immediately deposited same to his credit in his existing checking account in the Guaranty State Bank of Ardmore and mixed same with other money then to his credit in said account in that bank. From time to time he drew checks against said account, and in the month of October, 1920, he completely exhausted said account. Thereafter, he deposited further money to his account in said bank, but the record does not disclose where it was obtained by him. He died intestate on November 26, 1920, at which time he had a balance to his credit in said account of $2,087.90. It appears that he violated his trust agreement and never invested said funds in properties for the benefit of his cestui que trust. The record does not disclose what was done with any of this money. The agreed statement of facts recites, "That the same was

mixed with other funds and went to swell his general assets."

The trial court decreed the plaintiff to have a trust interest in the whole of the assets of said estate, and the defendant has duly perfected an appeal to this court.

After the appeal was lodged in this court, S. A. Apple and Jake L. Hamon, Jr., were substituted as plaintiffs in error by order of this court, they having been appointed administrators of said estate to succeed Georgae Hamon Rohrer.

For reversal, it is urged that the trial court erred in holding that plaintiff, Sallie A. Hert, had a preferred claim against the funds of said estate, for the reason that there is no sufficient tracing nor identification of her said property coming into the hands of the administrator of said estate.

In 26 R. C. L. par. 78, p. 1232, the general rule is announced as follows:

"Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. They arise purely by construction of equity, independently of any actual or presumed intention of the parties to create a trust, and are generally thrust on the trustee for the purpose of working out the remedy. The trusts are not what are known as technical trusts, and the ground of relief in such cases is, strictly speaking. fraud, and not trust. **Equity declares the trust in order that it may lay its hand on the thing and wrest it from the possession of the wrongdoer.**"

In Pierson v. Phillips et al.. 95 Atl. 622, the Court of Chancery of New Jersey states the rule as follows:

"What actually became of the trust funds is not known, and it is impossible in such circumstances to determine that the money was in or formed a part of any asset of intestate"'s estate. in the absence of any evidence to that effect. **Where the trust property cannot be identified either in its original or substituted form, this court can afford no relief of the nature here sought.**"

And the third paragraph of the syllabus in said case reads as follows:

"Where trust property cannot be identified either in its original or a substituted form in the hands of heirs of the original trustée after his death, a court of chancery can afford the beneficiary no relief by enforcing a lien upon the property as trust property; the sole remedy of the cestui in such case. being that of a creditor, not administered in chancery."

In Central National Bank of Baltimore v. Connecticut Mutual Life Insurance Company, 26 L. Ed. 693, the Supreme Court of the United States had under consideration a case involving the question now being considered, and in the body of the opinion, on page 700, the court said:

"The Master of the Rolls, Sir George Jessell, showed that the modern doctrine of equity, as regards property disposed of by persons in a fiduciary position, is that. whether the disposition of it be rightful or wrongful, the beneficial owner is entitled to the proceeds, whatever be their form, provided only he can identify them. If they cannot be identified by reason of the trust money being mingled with that of the trustee, then the cestui que trust is entitled to a charge upon the new investment to the extent of the trust **money** traceable into it."

The Supreme court of Nebraska, in Lincoln v. Morrison, 90 N. W. 908, said:

"But if the trustee 'destroys a trust fund by dissipating it altogether, there remains nothing to be the subject of the trust.' Wood, V. C., in Frith v. Cartland, 2 Hem. & M. 417. In such case, cestui que trust has no specific claim against any property or fund. He is merely a creditor of the trustee, and stands on the same basis as other creditors."

In the case of Cherry v. Territory, 17 Okla. 221, 89 Pac. 192, Mr. Justice Burwell quoted with approval from the Supreme Court of Kansas in the case of Travellers' Insurance Company v. Caldwell et al., 52 Pac. 440. as follows:

"To render an assignee liable to account to a party who had placed money in the hands of his assignor as a trust fund, it must appear either that the fund actually passed into the hands of the assignee, or that property into which it can be traced passed to his hands, or, if so commingled with the general assets of the assignor as to be incapable of identification or tracing, that the estate which did pass to the assignee was augmented or bettered thereby; and the use of the trust money by the assignor in the payment of his debts, and to defray the current expenses of his business, cannot be held an augmentation or betterment of his estate, when all the assets passing to the assignee existed as the property of the assignor prior to the receipt of the trust money by him."

In addition to the part quoted by Justice Burwell, the court also said:

"The fund itself, or something into which it has gone, and which stands as its representative, must be on hand, subject to identification, and separable from the general assets, in order to charge the assignee with the trust; or, if the fund has been so

commingled with the general assets as to be incapable of identification or tracing, the estate which came to the assignee must have been augmented or bettered in an appreciable and tangible way, in order to charge it with the trust. The mere saving of the estate. by the discharge of general indebtedness otherwise payable out of it, or the payment of the current expenses of the business, is not an augmentation or betterment of the estate, within the meaning of the rule. If the estate has not been increased by specific additions to it, or if what previously existed has not been improved or rendered more valuable, it has not been impressed with the trust claimed."

In Cherry v. Territory, supra, the court also quoted with approval from the case of Burrows v. Johntz, 48 Pac. 27, where the Supreme Court of Kansas said:

"A trust is not imposed on the assignee unless the funds of the plaintiff actually came into his hands in their original form, or commingled with the estate, or had been used by the assignor, to swell and increase the estate which passed by the deed of assignment."

Mr. Justice Burwell, in that case, announced the rule in his own language at page 228, as follows:

"If the claimant can trace his money into the general mass turned over to the receiver, it is sufficient."

It, therefore, seems that in impressing and enforcing a trust upon the property of an estate on account of the wrongful diversion by a trustee of funds entrusted to him by a cestui que trust, certain limitations upon the duty and power of the court are well recognized. The court will wrest from the estate and deliver to the cestui que trust only such diverted money as may be discovered in such estate, or such property or interest in assets of the estate as has been substituted for the money wrongfully diverted from the cestui que trust. The reason for this is that the recovery by the cestui que trust is more in the nature of an owner asserting his title than of a creditor collecting his account. The conflict of interest in such cases is usually, if not always, between the cestui que trust and the general creditors of the estate of such trustee. If a trustee uses the trust funds to pay his general creditors, he does not add to his assets. If the cestui que trust be treated as a general creditor, the other general creditors are not injured. Their claims are of the same value as they were had the diversion not occurred. This is equitable and just, as the general creditors have done no wrong. But, if the cestui que trust should be given, from the insolvent trustee's assets, property of the whole value of the diverted funds, then the dividends of the general creditors would be reduced below that which they would have received had the diversion not occurred, and, if the diverted funds equaled the value of the insolvent debtor's assets, the entire claims of general creditors would be wiped out through no fault of theirs. This would not be permitted in equity.

Tracing the trust funds into the hands of the trustee is not alone sufficient to impress a trust upon the assets of such trustee found in the hands of the administrator of his estate or in the possession of a receiver appointed by the court. Such diverted funds must be traced in some form into the hands of the administrator or receiver.

This rule is well established in this state by the opinion of this court in Cherry v. Territory, 17 Okla. 213, 89 Pac. 190, being a companion case to the case of the same style heretofore cited. In that case the court declined to indulge the presumption that, because the diverted funds were once placed in the general assets of the trustee, they remained there until his administrator or receiver took over the assets existing at the time of the appointment of such custodian.

In other words, a trust will be imposed only when the funds diverted, or that into which they have gone, may be found in the possession of the administrator or receiver.

Counsel cite and refer to the case of Watts v. Board of County Commissioners, 21 Okla. 231, 95 Pac. 771. The facts in that case do not appear to be very fully stated in the opinion. Mr. Justice Kane therein cites with approval both cases of Cherry v. Territory, heretofore discussed. It is apparent that he intended to follow the rules therein announced. If, however, the rule announced in Watts v. Board of County Commissioners, supra, appears to be in conflict with that announced in the cases of Cherry v. Territory, supra, we prefer to follow the rule as written in the last-named cases and specially approve the same. We also adhere to the rules announced in the various decisions of other courts quoted herein, as we believe them to be consistent with the great weight of modern authority and more in keeping with the purposes of equity.

From the foregoing, we conclude that the trial court erred, and its judgment is, therefore, reversed and the case remanded. with

directions to render judgment for the defendant.

BRANSON, C. J., and HARRISON, PHELPS, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.