## AYERS et al. v. FAY, Ex'x.

No. 29044.   March 26, 1940.

Rehearing Denied April 30, 1940.

Application for Leave to File Second Petition for Rehearing Denied May 14, 1940.

*102 P. 2d 156.*

A. J. Kriete and Arch K. Kriete, both of Tulsa, and L. S. Robson and G. Ray-

mond Bassman, both of Claremore, for plaintiffs in error.

C. B. Holtzendorff, of Claremore, for defendant in error.

RILEY, J. This action was commenced April 6, 1937, by James E. Ayers, administrator de bonis non of the estate of Elizabeth A. Stanley, deceased, of Washington, Vt. Ayers alleged defendant's testator, Roy Fay, was one and the same person as William E. Snow, who was appointed administrator of the estate of Elizabeth A. Stanley, on March 31, 1933, and served as such until October 6, 1935, at which time he absconded with assets of the estate in excess of $20,000. Ayers sought to impress a trust upon certain bank accounts and other property in Fay's possession at his death, on the theory the bank accounts constituted a portion of and the property was purchased by the funds of the Stanley estate.

On June 20, 1938, the trial court sustained the objection of the defendant to the introduction of any evidence on behalf of the plaintiff, and he excepted to said ruling. Thereafter, on the same day, the court sustained the motion of James E. Ayers and other heirs of the said Elizabeth A. Stanley, deceased, for an order substituting them as plaintiffs in lieu of James E. Ayers, administrator de bonis non. The record reveals no exception to this ruling on behalf of the original plaintiff. Thereafter the substituted plaintiffs filed their petition in said cause praying for substantially the same relief prayed for in the petition of the former plaintiff. The defendant then filed an answer. Another pleading which should be mentioned is the petition in intervention of Standard Accident Insurance Company. This intervener claimed a prior lien upon the assets of the estate of the said William E. Snow, alias Roy Fay, to the extent of $2,000 by reason of having been the surety upon two administrator's bonds in which Snow, administrator, was principal, and having been compelled to pay that amount to said estate because of Snow's conversion of the estate property.

With the issues joined upon the pleadings of the substituted plaintiffs and the intervener, the cause was tried to the court, who rendered judgment denying the plaintiffs any relief, but adjudging the claim of the intervener, Standard Accident Insurance Company, to be a just and valid claim against the estate of William E. Snow, alias Roy Fay, deceased. The adjudication of the issues between the plaintiffs and the defendant was based upon a specific finding that "the property, money, and funds coming into the hands of the defendant, as executrix of the estate of William E. Snow, alias Roy Fay, were no part of the property or funds belonging to the estate of Elizabeth A. Stanley, deceased, and, consequently, do not constitute trust funds in the hands of the defendant herein as executrix of the said William E. Snow, alias Roy Foy, deceased. * * *"

Thereafter both the defendant and the plaintiffs filed motion for a new trial. In her motion the defendant alleged error in that part of the judgment upholding the claim of the intervener. Both motions were overruled. The cause is presented to this court solely upon the petition in error of the plaintiffs, no cross-petition in error having been filed on behalf of the defendant. Consequently, the judgment of the trial court will be reviewed only upon the errors assigned in plaintiffs' petition in error and presented in their briefs. See Bilby et al. v. Harrison et al., 100 Okla. 67, 227 P. 407; Ramsey Oil Co. v. Burbage, 172 Okla. 573, 46 P. 2d 538.

Our continued reference to the parties will be by their trial court designations.

The argument in support of the plaintiffs' petition in error is presented under nine legal propositions. The first of these seems to be urged in support of the allegation that the trial court erred in sustaining the defendant's objection to the introduction of any evidence on behalf of the original plaintiff, James E. Ayers, administrator de bonis non of the estate of Elizabeth A. Stanley, deceased. We decline to consider this alleged er-

ror, for the reason that it is not properly before us. Since said original plaintiff took no exception to being substituted or displaced as plaintiff by the heirs of Elizabeth A. Stanley and he was never reinstated as a party to the action, he is not a proper party to this appeal and any error the trial court may have committed in sustaining the objection to the introduction of any evidence on his behalf while he was a party to the action became a moot question when he was thus, without objection, dropped from the roster of parties to the action.

The second and third propositions urged in the plaintiffs' brief may be correct as abstract propositions of law, but assuming, without deciding, that they are, they fail to demonstrate error in the judgment. They are urged in support of plaintiffs' right to bring suit upon their claim before the same has been presented to the defendant and by her disallowed. It does not appear that this question in any way influenced the judgment of the trial court. The court's denial of any recovery on behalf of the plaintiffs does not appear to have been due to their failure to file a claim against the estate of William E. Snow prior to their commencement of the action, but judgment appears to have been based entirely upon the finding that the property sought to be recovered was not property of the Stanley estate.

The remaining five propositions presented in plaintiffs' brief deal generally with the creation and tracing of trust funds. In her brief, defendant concedes her testator at one time was administrator for and received property of the Elizabeth A. Stanley estate, but denies the evidence, shows the property in her hands, as executrix under the will of Roy Fay, has ever been a part of the property held in trust by William E. Snow for the Stanley estate. Disposition of this question will be facilitated by a delineation of the applicable legal principles.

It has long been a fundamental concept of English law that a change in the form of a thing which is owned does not change the ownership. Derived from and based upon this concept is the rule that the equitable owner of trust property is entitled to that which arises out of such property by sale, exchange or otherwise. This rule is, in many instances, effectuated by a device known as "tracing," meaning nothing more nor less than identification, by the cestui, of the trust or its avails in the hands of the trustee or a third person not a bona fide purchaser. A majority of the courts require the cestui, seeking to follow trust property, to convince the court that the fund or property in the hands of the trustee or another not a bona fide purchaser is either all of, part of, or was produced by, the original trust res. Bogert, "Trusts & Trustees," vol. 4, sec. 921.

Early cases tended to impose on the cestui the unbearable burden of specifically identifying even coins and bills claimed subject to the original trust. But the more modern and certainly the more practical view is that trust funds have been sufficiently traced when it is shown they entered a mass of cash and have remained there. As stated in Massey v. Fisher (C. C.) 62 F. 958, "It is sufficient to trace it into the bank's vaults, and find that a sum squal to it (and presumably representing it) continuously remained there until the receiver took it. The modern rules of equity require no more." See, also, 65 C. J. 973, where it is stated sufficient proof is made if the cestui "* * * can show the particular fund or mass into which the trust money has gone, such as an individual bank account of the trustee." And where a trustee has commingled trust funds with his own, the cestui may recover, to the extent of the trust fund, the lowest balance to which the mass has been depleted. The trustee is presumed to have used his own funds first, so that the remainder is sufficiently identified as the trust fund. 65 C. J. 975.

With the above principles in mind, a resume of the evidence will show that:

Snow had been living with Elizabeth A. Stanley, his deceased wife's mother,

about three years at the time of Mrs. Stanley's death, March 15, 1933. During this time he did no work except possibly write articles for sport magazines, though it was not shown he had ever received remuneration therefor. Following his intestate's death he continued to live in her house alone, doing his own cooking and other housework. He gave no evidence by dress or otherwise of being a person of affluence. It was shown that he loaned Mrs. Stanley about $150 during the bank holidays, which sum was repaid after he was appointed administrator. He was given to frequent and excessive drinking. Helen Stanley Hope, a niece, whose home Snow visited three nights before he left Vermont, October 6, 1935, testified Snow's wife, her cousin, had died in 1924, subsequent to which time Snow lived in Boston and St. Johnsbury; that he went to live with Mrs. Stanley in 1930 because he had no other home or means of support; and at that time he had an old Ford car, which was put in a garage and never registered.

It was shown that in August, 1935, Snow purchased a car and later traded it for the car he drove to Chelsea. During these transactions he assumed the name William Stover, and then obtained license tags in New Hampshire in the name of Roy Fay.

For several months prior to October 6, 1935, Snow engaged in an elaborate and complicated series of financial transactions with two local banks whereby he converted the assets of the estate into bonds and cash. This, he explained, would facilitate distribution of the assets of the estate. He requested proceeds of the sales to be paid with bills of large denominations, but the bulk was paid with bills of $20 denomination and less.

Snow was shown to have opened personal checking accounts in the two local banks after he became administrator. Neither account ever had a large balance and both accounts were practically depleted a few days before Snow absconded. He was allowed $2,000 for care of

Mrs. Stanley during the time he lived with her.

Snow prepared for a hunting trip to Maine and informed several persons he would return in about two weeks and settle the estate. He was last seen in Washington, Vt., October 6, 1935. Within a few days he arrived at a tourist camp near Chelsea, Okla., selected perhaps for sentimental reasons because his wife was buried at Chelsea, Vt., their former residence. He now went under the name of Roy Fay. From time to time during the next 16 months he stayed at this tourist camp.

While staying in Chelsea he told of having $10,000, reputedly proceeds from sale of bonds, stocks, or some such property in the East. The owner of the tourist camp saw about $8,000 in Fay's money belt and induced him to open accounts in two Chelsea banks. On February 8, 1936, he deposited $4,960, consisting of a few $50 bills, but mostly $20 bills, in the Bank of Chelsea. Various subsequent deposits and withdrawals were made, leaving a balance at his death, February 20, 1937, of $669.29. On the same date he opened an account in the National Bank of Chelsea with $1,000 currency. On February 11th, he deposited $2,000 in American Railway Company travelers checks. Various other deposits and withdrawals were made in this account, leaving, at Fay's death, a balance of $2,000.

In about two weeks after his arrival in Chelsea he went to Ft. Worth, returning in a short time driving a new Packard coupe, which, on December 19, 1935, he traded to the Oklahoma Motor Company of Tulsa for a new Packard car, paying a difference of $329 in currency. Total price of this car was about $1,400. During this trade Fay used the name E. B. Brown.

In May, 1936, Fay suffered a heart attack at Daytona Beach, Fla., and the defendant, then a nurse, cared for him. Fay's health being such as to require a nurse, she came to Oklahoma with Fay, subsequently marrying him. Thereafter

they went to California on a pleasure trip lasting six months and returned a short while before his death. Fay left all his property to defendant by will.

Shortly after Fay's death, Helen Stanley Hope, a niece of Mrs. Stanley, deceased, came to Chelsea and positively identified Fay's body as that of the absconded Snow.

It is important to bear in mind the contest on this appeal is not between a cestui and a bona fide creditor of the trustee with a solvent estate, but is between a cestui and the personal representative of the trustee. This distinction is vital as pertains to the burden of proof.

Defendant inaccurately and incompletely quotes from 65 C. J. 965, sec. 889, which reads:

"The right to follow trust property in equity being based on the theory that a right of property still exists in the cestui que trust, the equitable right of recovery or reclamation generally does not exist, or no trust or lien can be enforced, if the trust property cannot be identified, or traced into some specific fund or thing, which is sought to be charged, and into which the original trust property has gone in some form or other."

The unquoted, particularly pertinent, remainder reads:

"The degree of identification required in an action between cestui and trustee is far less than that required where the rights of third persons are involved."

In support of the sentence last quoted is cited Mitchell v. Dunn, 211 Cal. 129, 294 P. 386, wherein it was held:

"In tracing trust funds into specific property necessary degree of identification is less, as between cestui and trustee, than it is between insolvent trustee and creditors."

In the body of the opinion, page 389, the court discussed Noble v. Noble, 198 Cal. 129, 243 P. 439, 43 A.L.R. 1235, as follows:

"* * * The degree of identification in an action between the cestui and the trustee is far less than in a case where the trustee is insolvent and the rights of creditors are involved. Whatever confusion may have existed in this regard in the decisions of this state was entirely set at rest by the case of Noble v. Noble, supra. That case held that in a contest between the cestui and the administrator of a deceased defaulting trustee, where the trustee had commingled trust and personal funds, the cestui had a special lien on the entire estate of the deceased solvent trustee, even though the trust funds could not be traced into any definite property. The court very carefully distinguished the cases involving the rights of creditors, and held that a different rule applied in such cases. The rule is now settled in this state that, when the money of the trustor can be traced into a particular fund, or deposit, though it be mingled with other money, the beneficiary may enforce the trust."

In Noble v. Noble, supra, it was also held:

"Where trustee leaves a solvent estate, with no creditors, his heirs or personal representatives stand in no other or better relation to the trust and properties thereof than [that which] trustee would have occupied if living."

Plaintiffs herein, beneficiaries of Elizabeth A. Stanley, deceased, were cestuis under the trust imposed upon William E. Snow, alias Wm. Stover, alias Roy Fay, alias E. B. Brown, when he became administrator of the Elizabeth A. Stanley's estate. Defendant is executrix and sole devisee under the will of Roy Fay, and can have no greater rights in the property involved than her testator.

Plaintiffs have shown that Snow, without a home and apparently dependent on Elizabeth Stanley, lived with her three years, during which time the largest sum of money he is known to have had was $150 loaned to his benefactor. Thereafter he is shown to have received $2,000 from the estate for care of Mrs. Stanley. During the three years prior to his appointment as administrator he had no bank account. Shortly thereafter he opened one in each of two local banks, though the balance in either was never large. For two years subsequent to Mrs.

Stanley's death he lived alone, cooking his own meals and doing his housework. From 1930 to 1935, he had no job, the only evidence of an occupation, other than administrator, being a writer of articles for sport magazines, but there was no evidence of success. His tax return showed no taxable property, real or personal. In 1930 he is shown to have had an old car, kept in a garage and not registered. Two months before his disappearance he purchased a Ford V8 coupe, soon traded for another under an assumed name. Within the next two and a half months he traded for two different cars, each more expensive and better suited to the tastes of a man of means. He is shown to have received large sums of money in bills of small denomination from the Stanley estate a few days prior to October 6, 1935, and within a few days he appeared at Chelsea, Okla., with large sums of currency which he carried in a money belt until a new acquaintance urged him to open the bank accounts involved in this case. Much of the money deposited was in bills of small denomination similar to that delivered by the bank in Vermont to Snow.

We find, and hold, plaintiffs have sufficiently borne the burden of tracing a portion of the converted funds of the Stanley estate to the personal accounts of Roy Fay, and that the balance in these accounts has never been lower than the balance found there at the time of his death. If any of the money deposited therein was Fay's personal money, it is presumed to have been withdrawn first and the remainder is presumed to be trust property. Having thus traced the funds, the burden shifted to defendant as the personal representative of Fay to show what portion, if any, belong to Fay individually. 65 C. J. 1055. This burden, defendant failed to assume. Her testimony at times seems to have been rather reluctantly and evasively given. During 10 months of the 16 months Snow was a fugitive from Vermont, defendant was with him first as nurse then as wife. No attempt was made to show Fay received any money during this period from his writings.

Defendant relies heavily on Apple et al., Adm'rs, v. Hert, 122 Okla. 153, 252 P. 823, 55 A. L. R. 1271. The instant case is distinguishable therefrom because therein the bank account of the trustee Hamon had been exhausted subsequent to the time the cestui's funds were deposited therein, and it was not shown the funds later deposited in the fund were any part of the trust funds. Here the funds were not only traced into the hands of the trustee, but it is admitted they were in the accounts when taken over by the administrator, and the accounts had never been depleted.

Plaintiffs also seek to impress a trust upon the car owned by Fay at his death, at least to the extent of $329 currency paid in addition to the car purchased in Ft. Worth and traded to the motor company in Tulsa. Under plaintiffs' proof the most that can be said is that the car possibly and perhaps probably was purchased with a portion of the trust funds, but the only evidence thereof is the fact of purchase at a time Fay had trust money in his possession. This is not a sufficient tracing to justify a finding that the judgment of the trial court in this respect is against the clear weight of the evidence.

Defendant testified she gave Fay $500 of her own money to deposit for her. She claims this is not a part of his estate. She did not specify the time she gave this money to Fay, though it is indicated it was prior to their marriage. Certainly it was after Fay opened the bank accounts involved herein, but no attempt is made to trace this money to either of these accounts, and defendant is not entitled to a judgment impressing any of the funds in said accounts with a trust in the amount of the money allegedly given to Fay.

Judgment is reversed, with directions to enter judgment in accordance with the views herein expressed.

BAYLESS, C. J., and OSBORN, GIBSON, and HURST, JJ., concur. WELCH, V. C. J., and DAVISON and DANNER, JJ., dissent. CORN, J., absent.

236

DAVISON, J. (dissenting). I cannot concur in the conclusion reached in the majority opinion. I find no fault with the rules of law set forth in the syllabus, but in my opinion paragraphs 5, 6, and 7 thereof do not apply to this cause, unless it can correctly be determined that the specific finding of the trial court (quoted verbatim in the majority opinion) which is in effect a finding that the evidence is insufficient to show that "the property, money, and funds" in the hands of the defendant as executrix of the estate of William E. Snow, alias Roy Fay, deceased, is any part of the property or funds of the Stanley estate, which said deceased admittedly converted into cash and negotiable securities while he was administrator of said estate, is clearly against the weight of the evidence. The rules of law set forth are by their own terms dependent for their applicability upon proof that the trust money (in this case the funds derived from the Stanley estate) was transmitted to the fund or mass or bank account from which their recovery is sought.

Granting that the evidence is sufficient in the present case to trace the Stanley estate's missing property, or the proceeds from the sale thereof, into the hands of William E. Snow (who as administrator of said estate was trustee thereof) before he came to Oklahoma, yet there is no positive proof in the record before us that he brought any of said funds to this state, that they had been commingled with his personal funds, or that the money comprising the deposits he made in the banks of Chelsea, Okla., had any relation to or connection whatsoever with the missing funds. All of the evidence by which it was sought to trace the missing funds of the estate from Snow's possession in Vermont to his bank accounts in Chelsea, Okla., is purely circumstantial. In order to concur in the conclusion of the majority, it must be inferred from the fact that Snow arrived in Chelsea with a large sum of currency on his person, that this sum was a portion of a larger sum of the estate's funds that he had received while administrator of said estate, before he came to reside at Chelsea, in spite of other evidence which indicates that said currency may have been derived from other sources. For all that the proof affirmatively established, all of the money which Snow deposited in the banks at Chelsea may have been his own earnings derived singly or collectively from several different sources that are mentioned in the evidence. Among these (besides the approximate sum of $2,000 he had received from the Stanley estate apparently as legitimate administrator's fees and expenses) are inheritances which he told his wife (defendant) he had received from a father and grandfather in Boston, Mass., his writing for magazines, and a position which after one of his absences from Washington, Vt., he told the witness Walter W. Bewsee he had secured with a steel company in Boston.

Unquestionably, the evidence as a whole is insufficient to prove beyond a doubt from what particular source came the money which Snow had on his person when he arrived in Chelsea, Okla. In cases where the evidence is of this character and there is ground for a difference of opinion as to its persuasiveness, weight, or probative value and the inferences to be drawn therefrom, I believe the doubt should be resolved in favor of the judgment of the trial court, who may see and know many things concerning the evidence which do not appear on the face of the record thereof. This court is firmly committed to the rule that the judgment of the trial court will not be reversed on appeal merely because it is possible, from an examination of the evidence, to reach a conclusion that is contrary to the trial court's findings upon questions of fact. See Johnson v. Rowe, 185 Okla. 60, 89 P. 2d 955.

While I recognize and agree with the modern trend which relieves the cestui que trust from identifying the exact coins and bills in tracing the trust money into a particular fund in the trustee's possession, yet unquestionably the rule has always been, and still is, that the money must be traced by clear and con-

vincing evidence (Winter v. Klein, 186 Okla. 74, 96 P. 2d 83) into the fund in some form or other. Granting or conceding as has already been done that under the record before us the missing funds of the Stanley estate were traced into the hands of the trustee, Snow, while he was administrator of said estate, such proof is not alone sufficient to impress a trust upon the assets of such trustee found in the hands of the administrator or executor of his estate. See Apple et al., Adm'rs, v. Hert, 122 Okla. 153, 252 P. 823, 55 A. L. R. 1271. Since the evidence is so far from conclusive that the money with which Snow arrived in Chelsea was a portion of the funds of the Stanley estate which he received while he was administering said estate in Vermont, and there is evidence from which it might be inferred that said money was derived from sources other than that, I am not convinced that the specific finding of the trial court is against the weight of the evidence, and that its judgment in accordance therewith is erroneous under the rule set forth in the syllabus of the opinion in the Apple Case, which reads as follows:

"Tracing the trust funds into the hands of the trustee is not alone sufficient to impress a trust upon the assets of such trustee found in the hands of the administrator of his estate or in the possession of a receiver appointed by the court. Such diverted funds must be traced in some form into the hands of the administrator or receiver." (Emphasis ours.)

Here, as in the Apple Case, there is no question but that the funds were traced into the hands of the trustee—no question but that before Snow came to Oklahoma and opened bank accounts at Chelsea he diverted funds of the Stanley estate into his own possession. That much, the defendant concedes, but no more. This brings us to that portion of the majority opinion where, in attempting to distinguish between the case at bar and the Apple Case, the following statement is made:

"Here the funds were not only traced into the hands of the trustee, but it is admitted they were in the accounts when taken over by the administrator. * * *" (Emphasis ours.)

This statement is misleading to say the least. It conveys the impression that in this case it is admitted that trust funds from the Stanley estate were in the bank accounts of William Snow at Chelsea, Okla. I find no basis in the record for such an assertion. Although, as I have pointed out, it was admitted that at one time Snow received funds from the Stanley estate, it was never admitted that these funds found their way into his bank accounts at Chelsea, Okla. The funds in these accounts are analogous to those comprising the deposits in the reopened or formerly exhausted account of Jake L. Hamon in the Apple Case, supra. In both cases the moneys in the accounts were assets of the depositor found in the hands of his personal representative after his death. In neither case does the record contain anything to place beyond the realm of mere speculation, conjecture, or inference the question of from what source came the money comprising said deposits.

For the foregoing reasons, this court is not justified, upon legal principles, in reversing the judgment of the trial court and holding, upon the basis of the circumstances described in the majority opinion, that said court's finding upon the pivotal question of fact in the controversy is clearly against the weight of the evidence, even though it be granted that said circumstances, aided by inference, are perhaps sufficient to cast grave doubt upon the correctness of said finding or even to support a conclusion contrary to that reached by the trial court.

Furthermore, I cannot perceive how any sound distinction can be drawn between the weight of the evidence upon the question of whether the bank deposits were derived from funds of the Stanley estate and the weight of the evidence upon the question of whether the sum of $329 which Snow paid upon the purchase of the Packard automobile was also derived from said estate's funds. If it be assumed that the majority opinion is correct in regarding the evidence as sufficient to establish that Snow was still in

possession of trust funds at the time he purchased the Packard as well as at the time he made the deposits, why should it be inferred from this fact that a portion of the trust funds went into the deposits and yet not also be inferred that a portion thereof was used in the purchase of the auto. In my opinion, the inconsistency in the diverse conclusions reached upon these two items in the majority opinion is patent. In what respect is the evidence any more adequate to afford a tracing of a portion of the trust funds into the bank accounts than it is to enable a tracing of a portion of the same funds into the consideration paid for the automobile? In my opinion, an examination of the evidence reveals no legally sufficient answer to this question.

On the basis of the foregoing considerations, I submit that the majority opinion reveals no legally sufficient reason for reversing the judgment of the trial court in any particular, and in my opinion, said judgment should have been affirmed.

WELCH, V. C. J., and DANNER, J., concur.