**In re SENECA OIL COMPANY and Seneca Drilling Company, Debtors.**

**UNITED STATES DEPARTMENT OF ENERGY, Appellee and Cross-Appellant,**

v.

**SENECA OIL COMPANY and Seneca Drilling Company, Appellants and Cross-Appellees.**

No. Civ–86–1866–T.

Bankruptcy Nos. 85–00825–A, 86–00826–A.

United States District Court, W.D. Oklahoma.

June 19, 1987.

See also, D.C., 76 B.R. 818.

John E. Green, First Asst. U.S. Atty., Steven K. Mullins, Asst. U.S. Atty., Oklahoma City, Okl., Beth N. Mizuno, Floyd I. Robinson, U.S. Dept. of Energy, Economic Regulatory Admin., Office of Judicial Litigation, Washington, D.C., for U.S. Dept. of Energy.

Stephen L. DeGiusti, Richard C. Ford, Crowe & Dunlevy, Oklahoma City, Okl., Lee Calligaro, Casson, Calligaro & Mutryn, Washington, D.C., Robert C. Bright, Bright, Nichols, Zrenda & Dunn, Oklahoma City, Okl., Frederic Dorwart, Holliman, Langholz, Runnels & Dorwart, Tulsa, Okl., for Seneca Oil Co.

## ORDER

RALPH G. THOMPSON, Chief Judge.

Before the Court is the appeal of the Bank of New York, Inter-First Bank of Dallas, N.A., United Bank of Denver, National Association, Credit Suisse, and Bank of Oklahoma, Oklahoma City, N.A. ("Appellants"), who appeal the April 28, 1986, Order of the United States Bankruptcy Court for the Western District of Oklahoma. In that Order, the bankruptcy court held that the Department of Energy ("DOE") had traced certain funds of Seneca Oil Company ("Debtor") which the DOE claims are subject to a constructive trust. The issue presented is whether the bankruptcy court erred in finding that the DOE traced the funds.

On July 5, 1985, the bankruptcy court issued an order, ruling that the DOE had failed to establish sufficient wrongdoing to warrant imposing a constructive trust or equitable lien upon the subject funds. The DOE appealed to this Court, and on December 12, 1985, this Court reversed the bankruptcy court on the constructive trust claim, holding that the debtor's violation of the DOE's newly discovered crude oil price regulations satisfied the "wrongdoing" element of a constructive trust. However, since there was no evidence before this Court at that time as to whether the DOE could trace the funds allegedly subject to the constructive trust, the case was remanded to the bankruptcy court to make such determination on the tracing issue. On April 29, 1986, the bankruptcy court held that the DOE had traced the trust res. The Plan of Reorganization has been confirmed and consummated. The money that the DOE claims is subject to the constructive trust has been set aside into a disputed claim fund pending the outcome of this appeal. The debtors, Seneca Oil Company and Seneca Drilling Company, have no interest in these funds.

This Court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. Bankruptcy Rule 8013; *In re Reid,* 757 F.2d 230, 233 (10th Cir. 1985). However, the standard of review on questions of law or mixed questions of law or fact is a *de novo* standard. *In re Brian Tibbetts Yeates,* 807 F.2d 874, 877 (10th Cir.1986); *Richmond Leasing Co. v. Capital Bank,* 762 F.2d 1303, 1307 (5th Cir. 1985).

Appellants claim that if the Banks prevail in this appeal, the funds will be available to pre-petition general unsecured creditors of the debtor. However, if the DOE prevails, appellants claim that the DOE will receive in excess of 75% of its claim, with general unsecured creditors receiving little, if anything, more on their claims.

Appellants' first proposition of error states that the bankruptcy court's failure to apply federal law was error. The bankruptcy court held that this Court's remand order precluded it from considering federal law, citing *Cherokee Nation v. Oklahoma,* 461 F.2d 674, 678 (10th Cir.1972), a decision dealing with the principle of law of the case. The appellants claim that since the tracing issue was not addressed in any prior proceeding, nor by this Court in the earlier appeal, the bankruptcy court was not required to apply federal principles nor constrained from applying state law. The appellants cite *Johnson v. Morris,* 175 F.2d 65 (10th Cir.1949) as the case which the bankruptcy court improperly applied in determining the issue on tracing. *Johnson* held that it was necessary to trace the trust fund in its original or converted form into specific or identifiable property in possession of the debtor in possession. The appellants claim that Oklahoma law, as found in *Ayers v. Fay,* 187 Okl. 230, 102 P.2d 156 (1940), provides that higher standards of tracing are required where the rights of third persons are involved, as in this case. Appellants further claim that it is a federal question as to whether or not a constructive trust may be imposed upon a debtor's general funds, citing *Elliot v. Bumb,* 356 F.2d 749 (9th Cir.), *cert. denied,* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966). However, it must be noted that the issue of whether or not a constructive trust should be imposed on these funds has been decided prior to this appeal. Therefore, it is only necessary now to determine whether the bankruptcy court erred in finding

that the DOE had sufficiently and properly traced the funds which it now claims it is entitled to receive. This Court finds that whether the bankruptcy court applied state, or federal, law, makes no difference, as the general principles of tracing are the same as to both.

The crux of appellants' arguments relate to whether or not the trust res was depleted because of the use of the funds by the debtor. The appellants cite four reasons for their contention that the DOE failed to meet its burden of tracing.

First, appellants claim the DOE did not trace the overcharge payments out of Seneca's general operating account. The overcharge payments which had been placed in the debtor's general operating account were used to purchase a certificate of deposit which created the account known as the "Suspense CD." The appellants claim the bankruptcy court failed to address the gap in the DOE's proof regarding the tracing of the funds from the overcharge purchasers to the Suspense CD. However, the appellees respond that although the CD was bought with funds from the debtor's general operating account, that it withdrew amounts equal to the overcharge payments which constitute the trust fund. The debtor then purchased either a CD or commercial paper with these exact amounts. Then, when the CDs matured, they were rolled over, followed by a purchase of more CDs. It appears that the evidence from the bankruptcy court on the issue of tracing shows that the original funds, although rolled over into new CDs upon maturity, could be traced from the time the overcharges were deposited into the debtor's general operating account until the time of bankruptcy. The appellants claim that there was no evidence regarding the balances in the general operating account between the date the deposits of the overcharges were made and the date funds were withdrawn from that account to fund the CD. However, evidence was received regarding the deposits of the overcharges into the debtor's general operating account,

as well as the amounts withdrawn equal to the overcharges, except for one instance which will be discussed below.[1] Thus, it appears possible that the bankruptcy court was able to apply the "lowest intervening balance rule," which is the applicable rule to be used in tracing funds, whether state or federal law is used. *See Johnson v. Morris*, 175 F.2d 65 (10th Cir.1949); *Ayers v. Fay, supra; In re: Heston Oil Company*, 63 B.R. 711 (Bankr.N.D.Okla.1986); *In re: Mahan & Rowsey, Inc.*, 62 B.R. 46 (W.D.Okla.1986). Therefore, this Court finds that the most significant issue in this appeal is whether the trust res was depleted because of the "use" of the funds by the debtor on three different dates: March 11, 1981; June 30, 1983; and February 10, 1985. These dates constitute reasons 2, 3 and 4 for appellants' contention that the DOE failed its burden to trace the trust funds.

## MARCH 11, 1981

On March 11, 1981, the Suspense CD matured and was credited to Seneca's general operating account in the amount of $754,209.03. The next day, this amount was used to purchase a new Suspense CD, overdrawing the general operating account by $291,793.77.

The appellants claim that the debtor's general operating account showed this negative balance when the Suspense CD was run through that account as a "forced debit." The appellants claim that it is the account statement that is controlling, citing *Republic Supply Company v. Richfield Oil Company*, 79 F.2d 375, 380 (9th Cir. 1935) as authority. Appellants claim that the account statement shows that at least $250,915.39 of the fund was depleted by the end of business on March 11, 1981. Appellants further state that the fact that the bank may have been willing to issue a new Suspense CD the next day by creating an overdraft in Seneca's general account does not alter the fact that there was a depletion of the fund. To counter this argument, the DOE contends that the evi-

---

1. This instance occurred in the June 30, 1983, alleged "use." As will be explained, the trust funds were never depleted below the amount of the res.

dence, through Mr. Moore, a bank director and expert witness, shows that CDs such as the one held by Seneca, are routinely "flushed through" a checking account on a "forced debit," which overrides the balance in the account pursuant to standing instructions. The DOE contends that a "forced debit" overrides the balance in the customer's account, even if the account is overdrawn at the time, because the maturing CD provides the bank with exactly the amount of money required to purchase the successor CD. It further claims that the posting of the CD rollover to the general operating account was merely the bank's mechanism for recording the rollover "somewhere." Testimony was received by Mr. Moore that the fact that the general operating account had been overdrawn was immaterial due to the forced debit. In the case of *In re: Tap, Incorporated,* 52 B.R. 271 (Bankr.D.Mass.1985), that Court addressed the issue of a negative balance as it related to tracing trust funds. The Court therein found that the negative figure was a "mere temporary bookkeeping entry later revised," when payment was stopped on certain checks. *Id.* at 278. Therefore, that Court found the negative balance not to be significant due to the bookkeeping entry made by the bank because it found that there actually was a res of $80,677.80 to transfer to a new account. In other words, merely because the banking statement showed the account to have been depleted, there was actually no depletion of the trust res, or else there would have been no possibility of transferring the funds to a different account. Similarly in the instant case, it was possible to trace identifiable funds into CDs, although they may not have comported with the banking statements on a given day for an account the bank merely shows the CD to be run through. Therefore, this Court does not find the bankruptcy court was in error in its findings that the apparent "depletion" shown on the banking statement of the debtor's general operating account was merely a booking device to avoid altering the terms of the CD and that the debtor actually had resources available to cover the overdraft.

## JUNE 30, 1983

■ On June 30, 1983, the Suspense CD was redeemed and was credited to Seneca's general operating account in the amount of $1,090,543.96. On that date, only approximately $228,000.00 of the CD was used to purchase commercial paper, which matured five days later, on July 5, 1983. The commercial paper, plus interest accrued, plus an additional $861,723.28 from the general operating account was used to purchase the Suspense CD in the amount of $1,090,818.10. The appellants contend that there was a balance of only $260,697.90 on June 30, 1983, therefore confirming the trust res was depleted to that amount. The DOE argues that the bank statement of Seneca on June 30, 1983, erroneously omits a deposit made that day, but not posted by the bank until July 1, 1983, of $920,527.64, which is substantiated by its general ledgers. With the $920,527.64 added to the balance shown of $260,697.90, Seneca actually had available to it a total of $1,181,225.54, which exceeds the total amount of the trust res. Therefore, this Court does not find that the bankruptcy court was clearly in error in its finding that the evidence showed Seneca had funds available on June 30, 1983, of an amount in excess of the revenue suspense fund. The bankruptcy court's finding that sufficient funds existed to trace the res is not clearly erroneous. "If new money is deposited before the balance is reduced, the reduction should be considered to be from the new money and not from the monies held in trust. This analysis may be referred to as the lowest intermediate balance test." 4 *Collier on Bankruptcy* (15th Ed.1987) § 541.13, p. 541–77.

## FEBRUARY 10, 1985

■ The third instance of an alleged use by Seneca of the trust res is February 10, 1985. The basis of the appellants' contention is that the existing Suspense CD was redeemed and placed with other cash and CDs. After the bankruptcy case was commenced, the remaining CD, of $2,000,000.00, was redeemed. Therefore, it was

held that the DOE had succeeded in its burden of tracing, as it was not necessary to trace beyond that point, citing *United States v. Randall,* 401 U.S. 513, 515 n. 1, 91 S.Ct. 991, 993 n. 1, 28 L.Ed.2d 273 (1971), and *Johnson v. Morris,* 175 F.2d at 68. This Court approves the bankruptcy court's legal conclusion on this point. This Court further holds that the fact that the trust funds traced by the DOE were contained in the $2,000,000.00 CD did nothing to destroy the res attributable to the DOE. *Reserve Oil, Inc. v. Dixon,* 711 F.2d 951 (10th Cir.1983); *Johnson v. Morris,* 175 F.2d at 67.

### CROSS–APPEAL

The DOE has cross-appealed for an accounting, claiming that the bankruptcy court erred in not ordering one as requested. The DOE appeals the portion of the bankruptcy court's order which provides that if the balance of the account containing the trust funds is less than the aggregate of the trust funds and interest thereon, that only this lesser amount shall be paid over to the DOE. It is undisputed that before it was declared that a constructive trust should be imposed on the subject funds, the bankruptcy court approved payment of costs from the fund. The law presumes that Seneca used its separate funds. *Turley v. Mahan & Rowsey, Inc. (In re Mahan & Rowsey, Inc.),* 35 B.R. 898 (Bankr.W.D.Okla.1983); *Ayers v. Fay,* 187 Okl. 230, 232, 102 P.2d 156, 159 (1940). The DOE is entitled to whatever funds, plus accrued interest, are contained in the suspense fund at the present time which is under the control of a Court-appointed Disbursing Agent. Requiring an accounting by Seneca, after confirmation of its Plan of Reorganization, is unnecessary, because the DOE's constructive trust extends to the funds as they exist, nothing more, nothing less. The bankruptcy court's order as to this issue is also AFFIRMED.

Based upon the foregoing, this Court finds that the bankruptcy court's April 28, 1986, order should be and is hereby AF-FIRMED as to the appeal of the appellant banks and the cross-appeal of the DOE.