In re REPUBLIC TRUST & SAVINGS COMPANY, an Oklahoma trust company, Debtor.

Bankruptcy No. 84–01461.

United States Bankruptcy Court, N.D. Oklahoma.

March 20, 1986.

See also, 47 B.R. 766.

Judith S. Brune, Tulsa, Okl., for movant.

Sam G. Bratton, II of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl., for trustee.

## ORDER DENYING MOTION TO DISMISS

MICKEY D. WILSON, Bankruptcy Judge.

Wesley R. McKinney has filed a "Motion ... to Dismiss Chapter 11 Proceedings of Republic Trust & Savings Company for Lack of Subject Matter Jurisdiction" and a brief and affidavit in support thereof. Jack D. Jones, Trustee of the Chapter 11 estate of Republic Trust & Savings Company, has filed an opposing "Response" and brief, which refer to a "Trustee's Report of Investigation" filed herein and to contents of a sealed transcript of examination of McKinney under Bankruptcy Rule 2004. McKinney and the Trustee have filed various replies and supplements to the above-mentioned motion, response briefs. Neither party has requested an evidentiary hearing. Upon consideration thereof, and of the record herein, the Court finds (for purposes of ruling on this motion), concludes and orders as follows:

## FINDINGS OF FACT

Republic Trust & Savings Company (hereinafter "Republic Trust") is a corporation, chartered as a trust company under Article X of the Oklahoma Banking Code (6 O.S.A. § 1001 et seq.).

. . . . .

Before approximately June 1984, an entity then known as Republic Bancorporation, Inc. (hereinafter "old RBI") owned a controlling interest in three different subsidiary entities, namely Republic Bank & Trust Company (hereinafter "Republic Bank"), Republic Financial Corporation (hereinafter "Republic Financial") and Republic Trust.

Republic Bank was FDIC-insured. Neither old RBI nor Republic Financial nor Republic Trust were, or have been at any time material hereto, FDIC-insured. Republic Trust applied for FDIC membership; the application was rejected.

Republic Bank, being FDIC-insured, was subject to supervision and regulation by the Federal Reserve Board. The Federal Reserve Board attempted to scrutinize operations of the non-FDIC entities, namely old RBI, Republic Financial and Republic Trust, because of their affiliation and close operating relationship with FDIC-insured Republic Bank.

Old RBI, Republic Bank, Republic Financial and Republic Trust were all, along with various other entities, dominated and directed by one Wesley R. McKinney.

In approximately June 1984, relationships among entities controlled by McKinney were altered in a series of transactions, hereinafter referred to collectively as "divestiture".

In the course of divestiture, old RBI changed its name to Sunbelt Bancorporation, Inc. (hereinafter "SBI"), while a different entity formerly known as Sunbelt Bancorporation, Inc. changed its name to Republic Bancorporation, Inc. ("new RBI").

Neither old RBI nor new RBI held any significant ownership interest in each other. Neither old RBI nor new RBI were or are FDIC-insured.

In the course of divestiture, old RBI (now SBI) continued to own FDIC-insured Republic Bank. However, old RBI (now SBI) transferred to new RBI the ownership of Republic Financial and Republic Trust.

After divestiture, old RBI (now SBI) owned FDIC-insured Republic Bank, and with it formed an affiliate group subject to Federal Reserve regulation because one member of the group, namely Republic Bank, was FDIC-insured.

After divestiture, new RBI owned non-FDIC Republic Financial and non-FDIC Republic Trust, and with them formed an affiliate group *not* subject to Federal Reserve regulation because *no* member of the group was FDIC-insured.

As a result of the divestiture, the connection between FDIC-insured Republic Bank and non-FDIC Republic Trust, which had existed when both were owned by old RBI, was severed.

After divestiture but before September 24, 1984, neither the Federal Deposit Insurance Corporation nor any other agency or instrumentality of the United States Government attempted to regulate, liquidate, reorganize, or assert any sort of jurisdiction or supervision over, or attempt to indemnify any creditors or alleged "depositors" of, Republic Trust.

On September 24, 1984, Republic Financial and Republic Trust filed separate, simultaneous voluntary petitions for relief under 11 U.S.C. Chapter 11 in this Court.

On September 27, 1984, R.Y. Empie, Oklahoma Banking Commissioner, moved and was permitted to intervene in the Chapter 11 case of Republic Trust as a party in interest, by agreement.

On September 28, 1984, the Court appointed a Committee of Creditors holding unsecured claims in Republic Trust. The Committee later engaged attorneys. The Committee and its attorneys have expended untold amounts of time and effort in discharging their duties, and continue to do so, in the course of which said attorneys have incurred considerable administrative costs.

On October 31, 1984, Jack D. Jones (hereinafter "Trustee") was appointed Trustee of the Chapter 11 case and estate of Republic Trust. The Trustee later engaged attorneys and accountants, who with the Trustee have expended untold amounts of time and effort in discharging their duties, and continue to do so, and in the course of which they have incurred considerable administrative costs.

Since the Trustee was appointed, a concerted and intense effort has been ongoing to unravel the web of complicated facts to accomplish administration of this estate, including determination of who are the creditors, and in what amounts, and their security if any; as well as determination of the identity and value of assets of the estate; all with a goal of offering a plan of reorganization to the parties in the interest as promptly as practicable.

The Court also appointed a Committee of Unsecured Thrift Certificate Holders for Special Purpose. The members of that Committee have expended untold hours attending hearings and conferences and communicating with creditors.

On January 10, 1985, various creditors filed a petition for involuntary relief under 11 U.S.C. Chapter 7 against Wesley R. McKinney (hereinafter "McKinney"). On

March 22, 1985, an order for relief in that case was entered, retroactive by operation of law to January 10, 1985.

On November 4, 1985, McKinney filed his "Motion ... to Dismiss Chapter 11 Proceedings of Republic Trust & Savings Company for Lack of Subject Matter Jurisdiction" with supporting documents, and simultaneously a similar motion with supporting documents in the case of Republic Financial.

On December 18, 1985, the Trustee filed his consolidated Plan of Reorganization in Republic Financial and Republic Trust. With permission of the Court, on December 26, 1985, the Trustee filed a corresponding Disclosure Statement.

On January 17, 1986, the Court entered an Order denying McKinney's motion to dismiss the Republic Financial case for lack of subject matter jurisdiction.

On January 30, 1986, the Court approved the Trustee's Disclosure Statement in Republic Financial and Republic Trust; and set a hearing on confirmation of the Trustee's Plan of Reorganization in Republic Financial and Republic Trust for March 21, 1986. From and after September 24, 1984, neither the Federal Deposit Insurance Corporation, nor any other agency or instrumentality of the United States Government, has ever attempted to intervene in the Chapter 11 cases of Republic Financial or Republic Trust, for the purpose of regulating, liquidating, reorganizing, or asserting any sort of jurisdiction or supervision over said debtors; or for the purpose of indemnifying any creditors or alleged "depositors" of said debtors.

## CONCLUSIONS OF LAW

McKinney moves "pursuant to Rule 12(b)(1) of the F.R.Civ.P. ..... to dismiss the Chapter 11 proceedings [herein] for lack of subject matter jurisdiction under 11 U.S.C. Sections 109(b) and 109(d)," motion p. 1.

■ Rule 12, F.R.Civ.P. does not apply "at large" in a bankruptcy case. It is made applicable within adversary proceedings by Bankruptcy Rule 7012(b) but this is not an adversary proceeding. Pursuant to Bankruptcy Rule 1017(d), a proceeding to dismiss a case is treated as a contested matter under Bankruptcy Rule 9014, which in turn makes certain other rules automatically applicable—but Bankruptcy Rule 7012 and Rule 12, F.R.Civ.P. are not among them. By bringing this proceeding to dismiss on authority of a rule which cannot apply until after the proceeding has been otherwise commenced, McKinney seeks to lift himself by his own bootstraps into Court. Further, McKinney's motion was not served on any members of the Creditor's Committee or their attorneys of record, who are surely "part[ies] against whom relief is sought" entitled to notice and opportunity for hearing pursuant to Bankruptcy Rules 1017(d) and 9014.

McKinney's motion and briefs call for dismissal of the case "for lack of subject-matter jurisdiction," yet are grounded on 11 U.S.C. § 109(b) and (d). This statute concerns eligibility of debtors for relief and *not* subject-matter jurisdiction, 2 *Collier on Bankruptcy* ¶ 109.09[2] at 109–7 (15th ed. 1985). This matter arises under 11 U.S.C. § 109 and in a case under Chapter 11 of Title 11, U.S.C., giving this Court subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a) and (b), 151 and 157, and Misc. Order No. 128, United States District Court for the Northern District of Oklahoma (July 24, 1984). Debtor's eligibility for relief under 11 U.S.C. § 109 is a question of substantive bankruptcy law; and, as will be discussed below, is a flexible matter decided on pragmatic grounds, utterly unlike the rigid limits of subject-matter jurisdiction.[1]

---

1. In a sense, every decision by a court to grant or withhold relief involves "jurisdiction"—its exercise, not its lack. Cases can be dismissed, and relief withheld, for reasons other than lack of subject-matter jurisdiction. 11 U.S.C. § 109 collects several such reasons, whose non-jurisdictional character may be indicated by examples.

If a debtor files for relief under Chapter 11, but is later alleged to be a "governmental unit" and "municipality" under 11 U.S.C. § 101(24),

■ The Court will overlook or reform these irregularities of McKinney's motion, and determines that it has before it a motion to dismiss pursuant to 11 U.S.C. § 1112(b) and § 109(d) and (b), and Bankruptcy Rules 1017(d) and 9014.

McKinney proposes that Republic Trust is ineligible for bankruptcy reorganization because of 11 U.S.C. § 109, which provides in pertinent part as follows:

> (b) A person may be a debtor under chapter 7 of this title only if such person is not—
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act 12 U.S.C. 1818(h)); ...
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (d) Only a person that may be a debtor under chapter 7 of this title, except a stockbroker or a commodity broker, and a railroad may be a debtor under chapter 11 of this title.

McKinney argues that Republic Trust is a "bank" within the meaning of this statute.

The term "bank" is not defined in Title 11, U.S.C. (hereinafter "Bankruptcy Code"). Nor are the other terms used in 11 U.S.C. § 109(b), e.g. "insurance company," "savings and loan association," etc. There are plenty of definitions of "bank" to be found in other statutes and in case law, both Federal and State. But they do not necessarily apply to 11 U.S.C. § 109(b); for one cannot assume that a definition chosen to further the intent of Congress in the Federal Deposit Insurance Act or the intent of the Oklahoma Legislature in the Oklahoma Banking Code would serve Congress' purpose in the Bankruptcy Code. Proper interpretation and construction of 11 U.S.C. § 109 requires determination of Congressional intent as to that particular statute. Accordingly, before considering any particular definition of "bank," the court will consider prior bankruptcy statutory and case law, the legislative history of the Bankruptcy Code, the plain meaning (if any) of 11 U.S.C. § 109, and the opinions of other courts as to the meaning and application of this statute.

The Bankruptcy Act of 1898 as amended by the Chandler Act (hereinafter "Bankruptcy Act") provided in § 4(a) that "[a]ny person, except a ... banking corporation ... shall be entitled to the benefits of this

(32) and (33) and eligible for relief only under Chapter 9 pursuant to 11 U.S.C. § 109(b), (c), (d) and (e), the Court could entertain a motion to convert from Chapter 11 to Chapter 9; if subject-matter jurisdiction were involved, the Court would have no authority whatever over debtor. (Omission of specific mention of conversion to Chapter 9 in 11 U.S.C. § 1112 indicates the unlikeliness, not illegality, of the event.)

If a debtor files for relief under Chapter 13, but is later found to have debts which exceed the limits imposed by 11 U.S.C. § 109(e), the Court could entertain a motion to convert form Chapter 13 to Chapter 7 or 11; if subject-matter jurisdiction were involved, the Court would have no authority whatever over debtor. If it further appeared that debtor was a "farmer" under 11 U.S.C. § 101(17), unwilling to convert, and not subject to unwilling conversion pursuant to 11 U.S.C. § 1307(e), any motion to convert would have to be denied and the case dismissed; but such dismissal would not be for lack of subject-matter jurisdiction, but for lack

of a category of relief available to this category of debtor.

Similarly, in the matter now before the Court, the Court is asked to categorize the debtor for purposes of eligibility under 11 U.S.C. § 109. If debtor, having been categorized, appears eligible for relief under some other Chapter of Title 11, the Court could consider conversion to such Chapter. If all categories of relief prove unavailable, the Court may then dismiss the case; but not for lack of subject-matter jurisdiction.

A non-bankruptcy example might be a diversity action in Federal District Court in which the parties are undoubtedly of diverse citizenship (conferring subject-matter jurisdiction) but in which plaintiff is nevertheless not a proper party (e.g., alleges no injury of his own and has o standing to bring an action on behalf of the injured party).

Contrarily, if debtor had file in this Court for reorganization pursuant to the Oklahoma Banking Code (Title 6, O.S.A.), then this Court would lack subject-matter jurisdiction.

Act as a voluntary bankrupt." No definition of "banking corporation" was provided by the Bankruptcy Act, and legislative history gave few clues, 1 *Collier on Bankruptcy* § 4.05[2] (14th Ed.1975). Courts considered such factors as (1) whether non-bankruptcy law categorized an entity as a "banking corporation;" (2) whether non-bankruptcy statute expressly provided that an entity would not be eligible for bankruptcy relief; (3) whether nonbankruptcy statute expressly provided that nonbankruptcy procedures for relief would be excessive; (4) availability and efficacy of non-bankruptcy procedures for relief; (5) extent of Federal or State regulation of an entity; (6) nature of an entity's operations under nonbankruptcy law; (7) nature and effect of an entity's operations as perceived by the bankruptcy court; (8) the sense of Congress and import of the term "banking corporation" as perceived by the bankruptcy court; (9) efficacy of bankruptcy relief if extended to an entity. Courts assembled these factors into a "state classification test" which emphasized the categorization, status and operations of an entity under nonbankruptcy law; and an "independent classification test" which presumed to place an entity within or without the excluded class according to the courts' own definition of the excluding term, *Id.* at 591. See *State of Kansas ex rel. Boynton v. Hayes*, 62 F.2d 597 (C.A.10, 1932), typically emphasizing "state classification" but only as presumably intended by Congress to be considered as a major factor in an "independent classification" under Federal bankruptcy law.

The "state classification test" was somewhat illusory, for no State scheme could override Congress' own intention as to who should be eligible for bankruptcy relief; and the "independent classification test" was merely another name for judicial interpretation and construction of the statute. It was observed that the so-called "tests" made sense only as expressions of *"broad discretion* in the bankruptcy courts for the purpose of serving the intent of the Bankruptcy Act," 1 *Collier on Bankruptcy* § 4.05[2] at 593 (14th Ed.1975) (emphasis added). Absent precise statutory definitions and clarifying legislative history, courts were free to take "a reasonable and flexible approach" to the matter of eligibility for bankruptcy relief and "should be guided largely by the question of whether a bankruptcy proceeding is a *satisfactory method* of liquidating the corporation under consideration, *Id.* at 592, 593 (emphasis added).

Such an approach was adopted in *In re Guaranty Trust Company*, No. BK–78–02019 (W.D.Okla. filed March 6, 1979). Guaranty Trust filed for relief under Chapter XI of the Bankruptcy Act; its eligibility under § 4(a) thereof was challenged by "depositors" of the bankrupt. Bankruptcy Judge Berry proceeded though both "state classification" and "independent classification" tests, deeming both of them "appropriate" without designating either of them as decisive; he then considered "whether a bankruptcy proceeding is a satisfactory method of rehabilitating or, if necessary, liquidating" the bankrupt, *Id.* p. 6. Since Guaranty did not pass muster as a "banking corporation under any of these tests, Judge Berry was not required to weigh any test against the others.

In creating the Bankruptcy Code, Congress eliminated the term "banking corporation" used in § 4(a) of the former Act and replaced it with a list of types of financial institutions to be ineligible for relief under § 109(b) of the new Code. In 1982, the original version of § 109(b) was amended by adding the phrase, "... or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1823(h)) ...," primarily to increase the authority and flexibility of the Federal Deposit Insurance Corporation (hereinafter "FDIC").

The Bankruptcy Code defines none of the terms used in 11 U.S.C. § 109(b) to designate financial institutions to be ineligible for bankruptcy relief. Legislative history indicates vaguely that the former exclusion is "expanded in light of changes in various banking laws" as to "banking institutions

... for which alternate provision is made for their liquidation under various State or Federal regulatory laws," SR No. 95–989. Congress has increased the number of types of institutions which are "explicitly" excluded from eligibility for bankruptcy relief—yet this means little, for without precise definitions, these exclusions are not very "explicit." The problem faced by courts in interpreting § 109(b) of the Bankruptcy Code is therefore similar to the problem faced with regard to § 4(a) of the Bankruptcy Act. Additions of types of excluded institutions broadens the scope of "state classification" and "independent classification" tests without changing the crucial question of whether a bankruptcy proceeding is a satisfactory method of rehabilitating or, if necessary, liquidating the debtor.

### (A)—State Classification Test

Republic Trust calls itself "a trust company" (and not "a bank") and is chartered as a trust company (and not as a bank) under the Oklahoma Banking Code.

The Oklahoma Banking Code defines "bank" and "trust company" as follows, in 6 O.S.A. § 102:

> "A. 'Bank' means any bank authorized by the laws of the state to engage in the banking business.

> \*      \*      \*      \*      \*      \*

> "K. 'Trust company' means any person doing a trust company business as set forth in this Code and the trust department of banks authorized to engage in the trust company business."

The Oklahoma Banking Code's distinction between "bank" and "trust company" turns on "banking business" as opposed to "trust company business." Neither of these terms are defined in the Oklahoma Banking Code; but the powers of banks and trust companies are listed in 6 O.S.A.

§ 402 "Powers of Banks and Trust Companies" and § 1001 "Powers of Trust Companies," and therefrom a description of banking business and trust company business may be derived. According to these statutes, banks may receive general deposits of money, and may buy and negotiate, but not issue, evidences of debt, 6 O.S.A. § 402(A)(10); while trust companies may receive deposits of trust moneys or of personal property, and may borrow money and issue evidences of debt, 6 O.S.A. § 1001A(1), (22). Banks may do trust company business if specially authorized to do so, 6 O.S.A. § 102(K), 402(A)(12); but nothing in the Banking Code authorizes trust companies to do banking business. Since Republic Trust was chartered as "trust company," it follows that Republic Trust was authorized to do trust company business and not banking business.

Republic Trust was subject to regulation, reorganization or liquidation, under procedures provided for banks to the extent applicable to trust companies, by the Oklahoma Banking Department and its Commissioner, 6 O.S.A. §§ 201 et seq., 1018, 1021. This does not make Republic Trust any less a trust company, since the Oklahoma Banking Code distinguishes between the names and powers of these types of entities and expressly acknowledges that regulation or wind-up procedures applicable to one may not be applicable to the other.[2]

■ From all of the above, the Court concludes that the State of Oklahoma classifies Republic Trust as a trust company and not as a bank; that the distinction is not in name only but involves distinctive powers and business activities; and that for purposes of the "state classification test," Republic Trust should be considered a trust company and not a bank, and therefore eligible for bankruptcy relief under 11 U.S.C. § 109(b) and (d).

---

**2.** It is senseless to maintain that a trust company is a bank merely because it is subject to an agency named the Oklahoma *Bank*ing Department. One might as well reply that, if a bank, it is necessarily eligible for relief under the *Bank*ruptcy Code. Any such principle would have alarming application—in United States Judicial Districts in Texas, for example, it might render the many different types of entities regulated by the Texas *Railroad* Commission eligible for "*Railroad* Reorganization" under Subchapter IV of Chapter 11.

### (B)—Independent Classification Test

"Under the independent classification test, bankruptcy courts construe section 109(b)(2) itself based upon their own definition of the words of the Bankruptcy Code, *"In re Central Mortgage & Trust, Inc. Central Mortgage & Trust, Inc. v. State of Texas ex rel. Sexton and Wynne*, 50 B.R. 1010 (D.C., S.D.Texas, 1985). In doing so, "it is ... appropriate to examine the powers and activities of [d]ebtor," *In re Guaranty Trust Company*, supra, p. 6, and measure them against the powers and activities generally associated with "banks" and other categories of entities excluded from eligibility for bankruptcy relief by 11 U.S.C. § 109(b)(2).

▮ As noted above, Republic Trust was chartered as a trust company and thereby authorized to exercise only trust company powers and do only trust company business. McKinney alleges that Republic Trust nevertheless exceeded its authority and regularly exercised bank powers and did banking business. McKinney claims to have been "imminently [*sic;* eminently?] familiar" with such unauthorized activities, McKinney brief p. 1, affidavit p. 1. But McKinney's affidavit "from memory," McKinney brief p. 2, asserts such unauthorized activities is inconsistent with his own sworn testimony in deposition. The Court determines that McKinney has produced no evidence of any probative value that Republic Trust did anything but its authorized trust company business; and accordingly finds and concludes, for purposes of ruling on this motion, that Republic Trust did in fact do trust company business and not banking business. In any event, *ultra vires* operations do not control eligibility for bankruptcy relief, *Gamble v. Daniel*, 39 F.2d 447 (C.A. 8, 1930) *cert. den.* 282 U.S. 848, 51 S.Ct. 27, 75 L.Ed. 752 (1930).

The Court therefore confines further discussion to Republic Trust's *authorized* powers and activities. As noted above, Republic Trust was authorized to receive deposits only of trusts moneys or personal property, but could borrow money and is-sue evidences of indebtedness. Debtor, by law, was not authorized to, nor did it, accept demand deposits on which checks were drawn or permitted. "Deposits" of non-trust moneys with Republic Trust were therefore not deposits (that is, bailments) at all; but were loans made by the creditor of Republic Trust, which Republic Trust promised to repay and for which Republic Trust issued certificates, not of deposit, but of indebtedness. Certificate holders (creditors) could demand payment of part or all of such debt at any time; but Republic Trust reserved the right to limit repayments to a percentage of Republic Trust's net cash flow, to schedule repayments accordingly in order of demand, and to require thirty (30) days' written notice. The scenario of events in which Republic Trust participated can only lead to the obvious conclusion that loans made by the creditors created a debtor-creditor relationship between the parties.

▮ An entity cannot be a bank if it lacks the power to receive deposits (although it may still not be a bank even if it has the power to receive deposits), *In re Central Mortgage & Trust, Inc.*, supra; *In re Prudence Co.*, 79 F.2d 77 (C.A. 2, 1935), *cert. den.* 296 U.S. 646, 56 S.Ct. 248, 80 L.Ed. 459 (1935); *Gamble v. Daniel*, 39 F.2d 447 (C.A. 8, 1930), *app'l dism'd* 281 U.S. 705, 50 S.Ct. 464, 74 L.Ed. 1129, *cert. den.* 282 U.S. 848, 51 S.Ct. 27, 75 L.Ed. 752; *In re Guaranty Trust Company*, supra; *Kansas ex rel. Boynton v. Hayes*, supra; *Clemons v. Liberty Savings & Real Estate Corp.*, 61 F.2d 448 (C.A. 5, 1932); *In re Cash Currency Exchange, Inc.*, 762 F.2d 542 (C.A. 7, 1985).

▮ McKinney argues that Republic Trust is an "industrial bank or similar institution" under 11 U.S.C. § 109(b) and as proof offers a copy of a cease and desist order issued against the old RBI by the Board of Governors of the Federal Reserve System which describes Republic Savings and Republic Trust as "nonbank subsidiaries ... that are industrial banks ...,"

McKinney consolidated reply (attachment).[3] But the last clause of 11 U.S.C. § 109(b) excludes an "industrial bank or similar institution *which is an insured bankas defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h); . . .*" (emphasis added). Whether or not Republic Trust is an "industrial bank," it is not "an insured bank as defined in" 12 U.S.C. § 1813 (h).

It is unclear whether the phrase "which is an insured bank," etc., applies only to an "industrial bank or similar institution," or to all of the types of financial institutions excluded from eligibility for bankruptcy relief regardless of other classifications. McKinney argues that the phrase "which is an insured bank," etc., applies only to industrial banks and similar institutions, and that insertion of a comma after the word "institution" would be necessary to make the phrase applicable to the entire list of types of institutions; and, as it is readily apparent to this court why Congress wishes to exclude FDIC insured "industrial bank or similar institution" it is not apparent why Congress would also exclude a non-FDIC or FSLIC insured bank, savings bank, cooperative bank, etc.

From all of the above, the Court concludes that Republic Trust did not have the power to receive deposits; that such power is essential to classification as a bank; that Republic Trust was not an insured institution as defined in 12 U.S.C. § 1813(h); and that for purposes of the "independent classification test," Republic Trust should be considered an uninsured trust company, and therefore not excluded from bankruptcy relief by 11 U.S.C. § 109(b) and (d).

### (C)—Alternate Relief Test

■ It should be understood that mere regulation by a State or Federal agency, or availability of some State or Federal procedure for liquidation no matter what its terms, does not render an entity ineligible for bankruptcy relief, *In re Prudence Co.,*

supra; *Sims v. Fidelity Assurance Ass'n,* 129 F.2d 442 (C.A. 4, 1942), *aff'd* 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943). No contradiction of this principle appears in the Senate Report 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787. Rather, it appears that, under the present Bankruptcy Code as under the former Act, courts should consider whether a bankruptcy proceeding is a satisfactory method, compared with available State and Federal non-bankruptcy methods, of reorganizing or liquidating a would-be debtor. Insofar as State provisions are concerned, the present inquiry overlaps the "state classification test;" insofar as non-State provisions and Congressional intent are concerned, the present inquiry overlaps the "independent classification test." Because this inquiry is not easily confined within either "state" or "independent classification tests," and because it emphasizes Congressional intent and factors of practicality and policy (the real gist of the matter before the Court), this Court treats it as a separate "test" following the example of *In re Guaranty Trust Co.,* supra. The question whether non-bankruptcy methods of relief are meant to be exclusive is difficult to disentangle from questions of availability and utility of such methods, and will therefore be treated here rather than as part of the "state classification test."

Oklahoma trust companies may be reorganized or liquidated as if they were banks, to the extent methods provided for banks are applicable to trust companies, 6 O.S.A. § 1021. Entities of a "hybrid" type may be subject to both bankruptcy and State banking laws, *Harman v. Willbern,* 227 F.Supp. 892 (D.Kan., 1964). (To whatever extent this bears on the "state classification test," reorganization under banking laws insofar as applicable, like regulation by the Banking commissioner, does not make a trust company a bank.)

■ McKinney alleges express statutory reservation of "exclusive power [to] the

---

**3.** At least, it seems to have directed against old RBI; the copy offered by McKinney has no

legible date and is an incomplete document.

Oklahoma Banking commission," McKinney consolidated reply p. 14, and cites in support 6 O.S.A. § 203(3), (5) and §§ 1021(B) and 1202(A). But § 203(3), (5) only grants the Commissioner power to make regulations; while §§ 1021(B) and 1202(A) deal with *involuntary* reorganization (while this Chapter 11 case is voluntary) after a hearing by the Banking Board (which McKinney does not allege ever took place). The Oklahoma Banking Commissioner's own motion to intervene in the case asserts no exclusive right to conduct reorganization of Republic Trust. Even if the Oklahoma Banking Commissioner did assert such right, the Court must still decide on other grounds whether or not said exclusive right exists.

McKinney claims that reorganization or liquidation by the Banking Department *"could be* administered by the Department at a great savings ...," McKinney consolidated reply p. 7 (emphasis added). The Court dismisses this assertion as without merit. A confirmation hearing on a plan of reorganization will soon be heard, which is the result of the aforementioned efforts of innumerable parties. To subject this estate, and ultimately the creditors, to additional time, trauma and expense of another administration by an administrative agency could only waste away dollars which should be available for distribution to creditors. Further, this Court is well aware of the avoiding powers of the trustee to achieve equitable distribution to creditors holding allowed claims.

No "alternate provision ... under ... Federal regulatory laws" need be considered as a factor in excluding Republic Trust from bankruptcy relief, since none is available to this non-FDIC-insured institution.

The Court concludes that Chapter 11 bankruptcy is a satisfactory method of reorganizing Republic Trust.

### SUMMARY AND ORDER

Since Republic Trust is not a "bank" or other excluded institution under any Oklahoma law or other criterion set forth above,

Republic Trust may be a debtor under the Bankruptcy Code; and this Court has jurisdiction over this subject matter and all entities and proceedings involved herein.

IT IS THEREFORE ORDERED that McKinney's motion to dismiss be, and the same is hereby, denied.