### In re HESTON OIL COMPANY, Debtor.

### The BISTATE OIL COMPANY, INC., A New York Corporation, Plaintiff,

### v.

### HESTON OIL COMPANY, an Oklahoma corporation; Utica National Bank & Trust Company, a National Association, Defendants.

**Bankruptcy No. 83-00173.
Adv. No. 83-0539.**

United States Bankruptcy Court,
N.D. Oklahoma.

Aug. 18, 1986.

is of inconsequential value or benefit to the estate.

Bert C. McElroy, John L. Randolph, Jr., and Dale J. Gilsinger of Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl., for plaintiff, BiState Oil Co.

A.F. Ringold and John Howland of Rosenstein, Fist & Ringold, Tulsa, Okl., for defendant, Heston Oil Co.

Robert S. Glass of Gable & Gotwals, Tulsa, Okl., for defendant, Utica Nat. Bank & Trust Co.

## MEMORANDUM OF OPINION

MICKEY D. WILSON, Bankruptcy Judge.

This matter comes on for hearing pursuant to the Court's Order of December 30,

1986, and pursuant to statements of counsel made at the hearing on February 7, 1986; and the Court specifically finds this is a Core proceeding under Section 157 of Title 28, more particularly the subsections therein of 157(b)(2)(A), (B), (C), (E), (K), (O). In adversary number 83–0465, Barrons Resources versus Heston Oil Company, Plaintiff, (Barrons) alleges, and Defendant, (Heston) admits that on or about December 30, 1981 Barrons paid Heston $365,514 in drilling expenses for a certain well; that such amount was deposited in Heston's general corporate account, the amount involved herein; that such amount was an overpayment to the extent of approximately $172,897.97; and Barrons was entitled to a refund of, or credit to and upon such overpayment; and that such refund or credit had not been given. Barrons asserts a constructive trust upon Heston's general account, the account involved herein, in the amount of such overpayment.

In its "Brief concerning further hearing", filed herein on February 7, 1986, Heston alleges that on July 6, 1982 the Heston 1981–B Private Drilling Partnership, hereinafter known as Heston PDP, paid Heston $272,831 in drilling expenses for a certain well; that said well was never drilled; that Heston PDP was entitled to a refund; that Heston drafted a check on its general corporate account in payment of such refund, and said check was dishonored. Heston asserts that under other circumstances than those pertaining among these and other parties in Heston's present Chapter 11 bankruptcy case that Heston PDP might forcibly argue the right to a constructive trust in the general account, as more fully shown in Heston's brief of February 7, 1986, at page 4.

That on or about September 21, 1982 the BiState Oil Company, hereinafter known as BiState, paid Heston $528,110 for purposes recited in the Court's Order filed December 30, 1985 which was deposited in Heston's general corporate account.

That during the month of December, 1982 through February, 1983 a total of 5 million 836 thousand 315 dollars was deposited from various sources in said general corporate account and a total of 5 million 494 thousand 970 dollars was withdrawn for various purposes from said account in a course of 1,877 transactions processed through said account.

The Court finds that during the period from September 21, 1982 to February 14, 1983 said account reached its lowest balance of $16,540 on November 23, 1982, and its highest balance of 1 million 354 thousand 857 dollars on February 10, 1983, and the balance in said account on the last business day before Heston filed its Chapter 11 petition was $663,685.

BiState alleges that some portion, at present undetermined, of the total withdrawals from said account during said period were used to pay operating, drilling, and completion expenses incurred on behalf of certain oil and gas limited partnerships and other joint interest owners, as more fully set forth in BiState's Trial Brief of February 7, 1985 at page 7. BiState alleges that the above mentioned partnerships and joint interest owners subsequently reimbursed Heston for such expenditures with funds which were eventually deposited, in amounts presently undetermined, in said account as more fully set forth in BiState's Brief at page 7 of its February 7, 1986 Brief.

Heston asserts that Utica, hereinafter known as Utica, but in the briefs and involved herein Utica will be referred to as Utica National Bank and Trust Company and The Chase Manhattan Bank, again, Heston asserts that Utica and Chase may assert interest in the funds deposited in this particular account as the proceeds of the accounts receivable and oil proceeds pledged to these banks, as set forth in Heston's Brief at page 4, of February 7, 1986.

Utica was a defendant in the present adversary proceedings until dismissed by BiState before trial, and as a party in interest has joined Heston in its Brief filed February 7, 1986 and in oral argument before the Court on that date.

On December 30, 1985 the Court made partial Findings of Fact and Conclusions of Law, finding the highest and lowest balance in the account, above stated, and that the Court should impose a constructive trust on the sum of money this plaintiff and other competing creditors may assert into the account, and that as to said sums so traced, each contributor would be entitled to that sum with the remaining portion being the basis for an unsecured claim.

At hearing for further trial on February 7, 1986 the parties requested the Court rule upon which properties may a constructive trust be imposed. The Court now seeks to attack that problem.

■ Whether, or to what extent a constructive trust will be imposed on a particular asset, even by a Federal Court upon assets of a debtor in bankruptcy, is a matter of State law. *Jaffke v. Dunham,* 352 U.S. 280; 77 S.Ct. 307, 1 L.Ed.2d 314 (1956).

■ Constructive trusts are equitable in nature, as set forth in *76 Am Jur 2d, "Trusts," Section 4 at page 221 and 222.* Whether or to what extent a constructive trust will be imposed, and how competing claims to monies which shall be subject to such trusts shall be adjusted, are in fact matters of purely equitable cognizance wherein the findings and judgment of the trial court will not be disturbed on appeal unless clearly erroneous, as more fully set forth in *Patterson v. McKeehen,* 168 Okl. 252, 32 P.2d 875, and further elucidated upon in *76 Am Jur 2d at page 249.*

■ A constructive trust is a remedial device whereby property which in law and in fact belongs to one party, the trustee, is treated by a court of equity as if it belonged to another party, the beneficiary. The device serves well to do equity as between trustee and beneficiary, but is obviously a dangerous game to play where innocent third parties, as an example other creditors of the trustee, are involved. As a general rule all parties owed unfulfilled obligations by another, that is the debtor, have as remedy claims for damages en-

forceable against the debtor's assets; and where debtor's assets are unsufficient to satisfy all such claims, then the claimant's share, pro-rata, in available assets, each claimant being satisfied or dissatisfied in proportion to his claim. But imposition of a constructive trust, though on some part of debtor's assets, reserves such assets to the trust beneficiary exclusive of others, enlarging the beneficiary's recovery while reducing the recoveries of other creditors. For this reason constructive trusts must be handled with care. Clearly recognized for what they are; that is remedial devices, not absolute rights, not used heedlessly, but when and as appropriate, with due regard for the rights of all concerned. Bankruptcy Courts must be especially careful in imposing constructive trusts on what would otherwise be property of the bankruptcy estate, since imposing such constructive trusts amounts to giving the beneficiary a non-statutory priority over other creditors in distribution of estate assets. *See U.S. v. Randall,* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273; *In re Mulligan,* 116 F. 715.

■ Constructive trusts may be imposed where (1) the beneficiary has suffered a particular type of wrong amounting to constructive fraud or breach of a fiduciary responsibility, and (2) where such wrong has deprived the beneficiary of property which is still identifiable or distinguishable from the Trustee's general assets such that the equitable fiction of continuing ownership of such property by the beneficiary may be maintained, provided that mere changes in form or substitutions for the original property of the beneficiary will not prevent imposition of a trust on such changed or substituted property.

The Court has already, by Interlocutory Order filed December 30, 1985, determined that BiState has suffered the type of wrong which amounts to a breach of fiduciary responsibility and justifies imposition of a constructive trust. It remains to be determined whether the property may be identified or distinguished upon which such constructive trust may be imposed.

There is almost too much precedent on this subject. In seven different briefs, responses, and the like, at trial, and at subsequent oral argument, the parties have cited and distinguished numerous cases, most of them from foreign jurisdictions. The Court has further consulted five American Law Review Annotations, 26 ALR 1, 35 ALR 744, 55 ALR 1271, 102 ALR 367, and 17 ALR 928, and several decisions of the Oklahoma Supreme Court and the United States Supreme Court. These cases propound the lowest intermediate balance rules; the Nashville versus Hallett rule, the rule in the Clayton case, the restatement rules, rule of proportionality, and variations of all of them. There seems to be almost as many "rules" as there are decisions; but this is not surprising when it is recalled that all of these cases deal with an equitable matter dependant, above all, on each Court's evaluation of the facts of each case. What at first sight seems a welter of contradictory cases resolves into a series of examples of how various equitable factors are reconciled and applied to actual situations.

The Court gives primary attention to the following Oklahoma Supreme Court opinions, whether or not dicta, as best indicating which factors would be considered, and how weighted, by an Oklahoma Court in solving this tracing problem. *See Apple v. Hert,* 122 Okl. 153, 252 P. 823; *Orr v. Rhodes,* 169 Okl. 387, 37 P.2d 300; *Ayres v. Faye,* 187 Okl. 230, 102 P.2d 156; *Burroughs v. Whitley,* 363 P.2d 150. Under the facts of this case this Court does adopt the lower intermediate balance rule as to the criteria to determine upon what corpus the Court should impose a constructive trust.

■ When Heston deposited BiState's money in Heston's general account, that account already contained monies representing, among other things, other trust's funds. Thereafter, when the account was reduced by withdrawals to its lowest balance of $16,520, *all* of the trust's funds contained in said account were depleted. The lowest balance of $16,540 represents, not BiState's funds alone, but the funds of Barons' and Heston's PDP, and any other trust beneficiaries whose monies had been deposited in said account. BiState has no claim to the lowest balance in the account exclusive of other trust beneficiaries. Although BiState can show that its funds went into said general account, BiState cannot distinguish them from other trusts' monies, and therefore cannot identify them in any meaningful sense. There is no presumption that Heston meant to withdraw money of one trust beneficiary before that of another. Indeed there is no reason in equity for any such presumption, for all of the trust's beneficiaries are equally innocent.

■ BiState alleges that the trust's monies withdrawn from the account were used to purchase or otherwise benefit properties from which Heston derived oil and gas revenues which in turn were later deposited in said account; and proposes to impress a constructive trust on such revenue deposits as replenishments of its depleted trust account. This proposition is unsound for several reasons. First, payment of expenses is not the sort of augmentation of estate which justifies imposition of a constructive trust, and an unknown part of Heston's withdrawals went to mere payment of expenses for drilling and operating expenses. Second, property acquired with trust funds may not itself be subject to imposition of a constructive trust, but only imposition of an equitable lien. Third. Since such withdrawals drew upon the monies of all trust claimants in the account, profits must have been obtained with the monies of *all* trust claimants, and later *all* deposits must have replenished *all* of the depleted trust funds in some measure, practically impossible, to calculate. BiState has no claim to replenishment deposits exclusive of other trust beneficiaries even if BiState can show that its funds were translated into oil and gas revenues redeposited in said account, BiState cannot distinguish them from other trust monies similarly used, and, therefore, cannot identify them in any meaningful

sense. There is no presumption that Heston meant to replenish the funds of any one of the trust beneficiaries before any of the others; indeed, there is no reason in equity for such presumption, for all of the trust beneficiaries are equally innocent.

In theory the respective contributions of BiState and other trust claimants to funds in the lowest balance, and to later replenishments might be sorted out. The calculations would be difficult, involving the percent of each trust claimant's deposit to the total deposit, a percent of the withdrawals applied to identifiable properties, the percent of revenues from such properties deposited in the account to total deposits after some date, adjustments of all of the above according to the dates separate trust funds were deposited, and some sort of integration or reconciliation of all of these factors. The result, however sophisticated, and hopefully accurate, would only ever be an estimate. And in assigning various portions of the present account balance to various claimants according to their estimated contribution, it would approximate the sort of pro-rata recovery that is the normal lot of unsecured creditors. Such a complicated and expensive exercise in juggling figures is in no sense an identification of BiState's or any other trust claimant's separate property; rather, it is an artificial reconstruction whose very necessity confesses that the separate property of each trust claimant can no longer be identified.

As between BiState and Heston alone, it may be sufficient to trace trust funds into an account and shift the burden to Heston to identify any part of such account that is not BiState's property; but where innocent third parties are involved the greater degree of identification is required of a claimant's separate property. Here, none of the trust claimants can show what part of Heston's present general account is their property or its proceeds.

BiState proposes to force Heston, by means of an accounting, to attribute some portion of said account to BiState's funds and their proceeds. Such an exercise is not only expensive, but uncalled for: It would exalt the equitable fiction of a constructive trust over the plain fact that the property of each trust claimant has lost its separate identity. In effect, the equities of the various trust claimants cancel each other out. In this case the result is *not* to reward Heston for its own wrongdoing, for Heston remains liable to these claimants as well as other creditors. The Court merely refuses to grant each trust claimant a non-statutory priority in distribution over other creditors, where such trust claimant has not carried its burden of showing that such extraordinary preference is appropriate. It is a case where the circumstances call strongly for the principle that equality is equity, and this is the spirit of the Bankruptcy law. *See Cunningham v. Brown,* 265 U.S. 1, 13, 44 S.Ct. 424, 427, 68 L.Ed. 873.

There is an overriding equity which must not be lost sight of, namely the security interest of Utica National and The Chase Manhattan banks in Heston's oil and gas revenue. As against all the trust claimants, the banks are innocent third parties, and the fiction of a constructive trust does not prevail against their real interest. An exhaustive accounting to determine the trust claimant's respective shares in a fund which is largely or entirely subject to prior secured interests would be unproductive, a waste of time and a waste of estate funds.

As the Court is unable to ascertain a sum of money upon which it may impress a constructive trust without preferring one claimant over another, the Court declines Plaintiff's request for imposition of a constructive trust. Plaintiff shall be allowed an unsecured claim in the sum of $528,110 plus interest thereon at 11 percent per annum from September 22, 1982 to date of the filing of the petition herein in the sum of *$81,328.72,* or a total claim of $609,438.72. Proceeds of the account shall be retained by the debtor to be distributed according to applicable law, and the Court is well aware these proceeds are subject to the secured claim of Utica.

The foregoing shall constitute the Findings of Fact and Conclusions of law in

accordance with Bankruptcy Rule 7052; and for the convenience of the parties the Court will request that the reporter transcribe the dictation of this Memorandum of Opinion and file the same, and afford copies of the same to the parties.

By virtue of the memorandum of opinion entered in this adversary proceeding, the Motion of the Plaintiff to Compel Accounting is denied.

As to the motion of the defendant, Heston, to Reconsider the Interlocutory Order of December 30, 1985, recently filed herein, the Court has set forth in said memorandum and order the amount of the allowed unsecured claim. The Court is familiar with adjustments, settlements, and the like as well as various and sundry other possibilities which would in fact show BiState has suffered as set forth in their original Complaint; and, accordingly, the motion of Heston to reconsider the Interlocutory Order, and to reconsider the Order entered herein this date, is denied.