In re **REPUBLIC FINANCIAL CORPORATION, an Oklahoma corporation, Debtor.**

**R. Dobie LANGENKAMP, Successor Trustee, Plaintiff,**

v.

**Kenneth D. MOORE and Mary L. Moore, Defendants.**

Bankruptcy No. 84–01460.
Adv. No. 85–0304.

United States Bankruptcy Court, N.D. Oklahoma.

July 6, 1987.

See also, 47 B.R. 766.

Sam G. Bratton, II, John J. Carwile, Richard H. Foster, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl., for plaintiff.

William E. Rutledge, Tony W. Haynie, Conner & Winters, Hal F. Morris, Chapel, Wilkinson, Riggs, Abney & Henson, Tulsa, Okl., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GLEN E. CLARK, Bankruptcy Judge.

This matter came on for trial before the Court on June 1, 1987. The plaintiff was represented by Sam G. Bratton, II, John J. Carwile, and Richard H. Foster, of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Oklahoma; the defendants were represented by William E. Rutledge and Tony W. Haynie, of Conner & Winters, Tulsa, Oklahoma, and Hal F. Morris, of Chapel, Wilkinson, Riggs, Abney & Henson, Tulsa, Oklahoma. Trial was concluded on June 5, 1987, at which time the Court took this matter under advisement.

The Court, now having duly considered the evidence presented to it, together with the memoranda and arguments of counsel, makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff is the successor trustee of the estate of Republic Financial Corporation ("RFC"), the debtor in the above-captioned bankruptcy proceeding.

2. This chapter 11 bankruptcy proceeding was commenced on September 24, 1984.

3. Jack D. Jones was appointed trustee in the case on October 31, 1984.

4. R. Dobie Langenkamp was appointed successor trustee in the case on May 9, 1986, effective May 16, 1986.

5. RFC was an uninsured financial institution, principally engaged in the business of issuing evidence of debt and the making of commercial and personal loans, both secured and unsecured.

6. On or about April 4, 1984, in exchange for cash or other valuable consideration from the defendants worth $91,000.00, RFC issued to the defendants that certain thrift certificate number 1401423, dated April 4, 1984, in the principal amount of $91,000.00.

7. During the 90-day period immediately preceding the date of the filing of the bankruptcy petition herein, RFC made the following transfers of its property to or for the benefit of the defendants (hereinafter "the transfers"), to-wit:

| DATE | AMOUNT |
|------|--------|
| July 10, 1984 | $91,000.00 |
| August 29, 1984 | 2,187.17 |
| September 18, 1984 | 2,027.11 |

8. The transfers of $2,187.17 and $2,027.11 on August 29 and September 18, 1984, respectively, were wire transfers to Republic Trust & Savings Company, an affiliate of RFC. The transfer on July 10, 1984 was made through RFC check number 45278, in the amount of $91,000.00, which the defendants received and defendant Kenneth D. Moore endorsed.

9. The principal asset of RFC was its loan portfolio.

10. The liabilities of RFC consisted primarily of its obligations to purchasers of its thrift certificates and passbook thrift certificates.

11. RFC was primarily a collateral lender.

12. Prior to September 24, 1984, RFC routinely engaged in unsafe and unsound lending practices. These practices included:

(a) RFC did not properly evaluate loan requests in terms of credit history, character, capacity to repay, collateral value, or adequacy of capital or net worth;

(b) RFC did not evaluate loan requests with respect to the effects of worsening economic conditions;

(c) RFC and its borrowers did not agree upon a loan repayment program at the time of loan origination;

(d) RFC made loans that did not provide for periodic payments;

(e) RFC made and reviewed loans without adequate collateral appraisals or title searches;

(f) RFC deferred and extended loans without full payment of interest and reduction of principal;

(g) RFC made an inordinate number of loans to officers and directors, their relatives and other corporations or entities controlled by them, wholly without adequate security for the loans or other reasonable prospects for repayment;

(h) RFC failed to recognize or establish adequate loan loss reserves against nonperforming or poor quality loans;

(i) RFC intentionally misrepresented the quality or character of nonperforming or low quality loans and took affirmative actions to disguise the true quality of such loans.

13. On June 29, 1984, through a corporate reorganization referred to as "the divestiture," ownership of RFC was transferred from its parent corporation, Republic Bancorporation, Inc. ("Old RBI") to a newly formed parent corporation, also known as Republic-bancorporation, Inc. ("New RBI"). Prior to the divestiture, Old RBI was indebted to RFC in the amount of $1.5 million. In the divestiture transaction, this debt was transferred to New RBI. As a result of the divestiture, RFC encountered significant and devastating liquidity problems, and the divestiture seriously impaired RFC's ability to raise capital.

14. The general ledger balance sheets for RFC show a $1.5 million to either Old RBI or New RBI as an asset on every day from June 25, 1984 to September 24, 1984.

15. On the date of the transfers at issue herein and at all times during the 90–day period immediately preceding the filing of the bankruptcy petition New RBI was completely unable to repay the $1.5 million loan, and the fair value of this loan was zero.

16. The debtor's schedules list property totaling $21,604,279.67 and debts of $25,-196,162.30, as of September 24, 1984, the date of the filing of RFC's petition.

17. Harold J. Madigan, an independent loan portfolio expert, rendered an opinion that on June 25, 1984, 52 loans in RFC's loan portfolio were overvalued in the amount of at least $11,914,917.00, and he further rendered an opinion that a writedown or reserve against these loans in this amount was appropriate. A write-down or reserve against these loans in the amount of the overvaluation would render RFC insolvent on June 25, 1984.

18. Touche, Ross & Co. was retained by the trustee to perform a comprehensive investigation and analysis of RFC's affairs

and condition. Richard Spillers on behalf of Touche, Ross & Co. rendered an opinion that on June 25, 1984, RFC's assets were overvalued in the amount of at least $8,001,000.00. Spillers further rendered an opinion that a write-down or reserve against the assets of RFC in the amount of the overvaluation would render RFC insolvent on June 25, 1984.

19. Harold J. Madigan, an independent loan portfolio expert, also rendered an opinion that on September 24, 1984, 30 loans in RFC's loan portfolio were overvalued in the amount of at least $12,040,413.00, and he further rendered an opinion that a write-down or reserve against these loans in this amount was appropriate. A write-down or reserve against these loans in this amount would render RFC insolvent on September 24, 1984.

20. Touche, Ross & Co. reviewed the debtor's financial statements for each of the 90 days next preceding the filing of the debtor's petition and was of the opinion that RFC was insolvent on each such date.

21. There were no developments from June 25, 1984 to September 24, 1984 that improved the financial condition of RFC.

22. The affirmative evidence offered by defendants to support a claim of solvency consisted of the testimony of Ansil L. Ludwick, former president of RFC, the testimony of Paul Anderson, former vice chairman of RFC, and the unaudited daily general ledger balance sheets for RFC prepared during the 90–day period prior to bankruptcy.

23. From June 25, 1984 to September 24, 1984 the loan portfolio asset values shown on the RFC general ledger balance sheets were significantly overstated.

24. The Court finds the daily general ledger balance sheets to be unreliable evidence of RFC's financial condition or its asset value from June 25, 1984 to September 24, 1984.

25. The Court finds that the testimony of Ansil L. Ludwick and Paul Anderson that RFC was solvent from June 25, 1984 to September 24, 1984 is not credible and is contradicted by the evidence introduced by the plaintiff.

26. The RFC estate's lawsuit against Aetna Casualty and Surety Company ("Aetna") is a contingent, inchoate, and speculative claim, and cannot be rendered available for payment of the RFC estate's debts within a reasonable period of time. The Court finds that this cause of action is an asset of the estate. However, in light of the nature of the claim and the evidence before the Court, for the purposes of the test for insolvency under § 547(b)(3) and the test for greater recovery under § 547(b)(5), the Court finds the value of this asset to be zero.

27. The RFC estate's lawsuit against Peat, Marwick, Mitchell & Co. is a contingent, inchoate, and speculative claim, and cannot be rendered available for payment of the RFC estate's debts within a reasonable period of time. The Court finds that this cause of action is an asset of the estate. However, in light of the nature of the claim and the evidence before the Court, for the purposes of the test for insolvency under § 547(b)(3) and the test for greater recovery under § 547(b)(5), the Court finds the value of this asset to be zero.

28. There is no evidence of the existence of any claims or causes of action, other than collections, that could be rendered available for payment of the RFC estate's debts within a reasonable period of time.

29. On June 25, 1984, the fair value of RFC's debts exceeded the fair value of its assets.

30. On each and every day in the period from June 25, 1984 to September 24, 1984, and including the dates of the transfers at issue, the sum of RFC's debts exceeded the fair value of its assets, and therefore RFC was insolvent on those dates within the meaning of § 547 of the Bankruptcy Code.

31. The transfers on July 10, August 29, and September 18, 1984 were in payment of RFC's obligations to the defendants under thrift certificate number 1401423.

32. The Court finds that the evidence establishing the debtor's insolvency on the date of the filing of the bankruptcy petition is relevant and probative of the amount which the defendants would have received had this been a case under chapter 7 of the Bankruptcy Code, the transfers had not been made, and the defendants received payment of the debt to them to the extent provided by the provisions of the Bankruptcy Code.

33. The transfers at issue enabled the defendants to receive more than they would have received if the case were a case under chapter 7 of the Bankruptcy Code, the transfers had not been made, and the defendants received payment of the debt to them to the extent provided by the provisions of the Bankruptcy Code.

34. Defendants were the initial transferees of the foregoing transfers and were the persons whose benefit the transfers were made.

35. From July 10, 1984 to September 24, 1984, defendants furnished to RFC new value totaling $4,214.28.

36. The transfers were in payment of a debt incurred in the ordinary course of business or financial affairs of RFC.

37. The transfers were made in the ordinary course of business or financial affairs of RFC.

38. The transfers were made according to ordinary business terms.

39. The transfers were made in payment of a debt incurred in the ordinary course of business or financial affairs of the defendants.

40. The transfers were made in the ordinary course of business or financial affairs of the defendants.

41. Defendants have failed to establish by clear and convincing evidence that RFC obtained the $91,000.00 from defendants on April 4, 1984 through false, fraudulent, or misleading representations or statements of material fact. Defendants further have failed to establish by clear and convincing evidence that they reasonably relied on any false, fraudulent, or misleading misrepresentations in purchasing thrift certificate number 1401423. Defendants further have failed to establish by clear and convincing evidence that they were fraudulently induced to purchase thrift certificate number 1401423.

42. RFC routinely and regularly commingled all funds received through the sale of its thrift certificates or passbook account certificates, in one single operating account with Sunbelt Bank and Trust, of Tulsa, Oklahoma, which account was used for all general operations of RFC. Defendants have failed to introduce any evidence showing that they can trace the $91,000.00 paid to RFC for the purchase of thrift certificate number 1401423.

43. The defendants have failed to establish that the postpetition conduct of the trustee, successor trustee, or their agents was improper, or grossly inequitable. To the contrary, with respect to the acts complained of by defendants, this Court specifically finds as follows:

(a) At a hearing on March 21, 1986, and in its order dated March 21, 1986 in this case, this Court approved the notice and confirmation of the RFC plan of reorganization and found that the same was proper and in compliance with all requirements of the Bankruptcy Code in all respects;

(b) At a hearing on October 8, 1986, and in its order of October 15, 1986, this Court affirmed and approved the successor trustee's abandonment of, and decision to not pursue preference claims of less than $5,000.00 and the decision to not seek to avoid or recover transfers of funds between RFC and Republic Trust & Savings Company; and

(c) At a hearing on September 23, 1985, and in its order dated December 4, 1985 in this case, this Court approved the omnibus settlement agreement between the RFC and Republic Trust estates.

## CONCLUSIONS OF LAW

1. RFC is qualified to be a debtor under 11 U.S.C. § 109 and this Court has jurisdiction over the subject matter of this adversary proceeding. *See* order entered Janu-

ary 19, 1986 in *In re Republic Financial Corp.*, case number 84–01460, in the United States Bankruptcy Court for the Northern District of Oklahoma, *and In re Republic Trust & Savings Company*, 59 B.R. 606 (Bkrtcy.N.D.Okla.1986); *affirmed by* order entered March 19, 1987 in the United States District Court for the Northern District of Oklahoma, 77 B.R. 282, case numbers 86–C–77–B and 86–C–312–B (consolidated).

2. The RFC bankruptcy case was commenced prior to October 8, 1984, and the 1984 Amendments to Section 547 of the Bankruptcy Code are not applicable to this adversary proceeding. Memorandum opinion dated April 9, 1987 in *R. Dobie Langenkamp v. Saied*, adversary number 85–0302, United States Bankruptcy Court for the Northern District of Oklahoma.

3. The defendants have no right to a trial by jury of this adversary proceeding. Order entered February 26, 1987 in *R. Dobie Langenkamp v. Moore*, 77 B.R. 840, United States Bankruptcy Court for the Northern District of Oklahoma; *see also In re Southern Industrial Banking Corp.*, 70 B.R. 196, 201–02 (E.D. Tenn.1986).

4. The principal debt under RFC thrift certificate number 1401423 was incurred upon the issuance of such thrift certificate. *See* memorandum opinion dated April 9, 1987, in *R. Dobie Langenkamp v. Saied*, adversary proceeding number 85–0302, in the United States Bankruptcy Court for the Northern District of Oklahoma, p. 7; *Barash v. Public Finance Corporation*, 658 F.2d 504, 509–511 (7th Cir.1981); *In re Property Leasing & Management, Inc.*, 46 B.R. 903, 913–14 (Bkrtcy.E.D.Tenn.1985); *In re Head*, 26 B.R. 578, 580 (Bkrtcy.M.D. Fla.1983); *In re McCormick*, 5 B.R. 726, 730 (Bkrtcy.N.D. Ohio 1980).

5. The interest debt under RFC thrift certificate number 1401423 was incurred upon the issuance of the certificate. *In re Acme-Dunham, Inc.*, 50 B.R. 734, 740–42 (D.Maine 1985); *In re Property Leasing and Management, Inc.*, 46 B.R. at 913–14;

*In re Goodman Industries, Inc.*, 21 B.R. 512, 521 (Bkrtcy.D.Mass.1982).

6. The transfers were made more than 45 days after the debt was incurred. *See* memorandum opinion dated April 9, 1987, in *R. Dobie Langenkamp v. Saied*, adversary proceeding no. 85–0302, p. 7.

7. The defendants were, by virtue of the foregoing thrift certificate, at the time of the transfers, creditors of RFC. *See* order entered January 17, 1986 in *In re Republic Financial Corp.*, case number 84–01460, in the United States Bankruptcy Court for the Northern District of Oklahoma, at p. 2; *cf. In re Republic Trust*, 59 B.R. at 613.

8. The transfers were for or on account of an antecedent debt owed by RFC to the defendants before such transfers were made.

■ 9. Defendants' claim that they were denied due process and that they have a total and complete setoff because they were not given notice of the RFC bankruptcy proceedings is not a defense to this avoidance action under 11 U.S.C. §§ 547 and 550. *See* memorandum opinion dated April 9, 1987, in *R. Dobie Langenkamp v. Saied*, adversary proceeding number 87–0302, at pp. 8–9.

■ 10. The payment by RFC to defendants on July 10, 1984, was not a settlement payment for a security within the meaning of 11 U.S.C. §§ 546(e) and 741(8). 11 U.S.C. § 741, *et seq.* governs liquidation of stockbroking entities, not financial entities such as RFC. *See generally* 4 COLLIER ON BANKRUPTCY, ¶ 741 *et seq.*, subchapter III (15th ed. 1986); *cf. Baroff*, 497 F.2d at 282–283; *In re Hanover Square Securities*, 55 B.R. 235, 237–239 (Bkrtcy.S.D.N.Y.1985); *In re John Muir & Co.*, 51 B.R. 150, 152–153 (Bkrtcy.S.D.N.Y. 1985). RFC was not a stockbroker or stockbroking entity, and RFC's payments to its creditors under RFC thrift certificates were not made from or for a securities account or securities accounts.

11 U.S.C. § 741 supplies definitions "for this subchapter." In particular, § 741(2)(A) defines "customer," as "an en-

tity with whom the debtor deals as a principal or agent and that holds a claim against the debtor on account of a security received, acquired, or held by the debtor in the *ordinary course of business as a stockbroker* from or for the securities account or accounts of such entity." The definition of "customer" contained in 11 U.S.C. § 741(2) is based upon the definition found in the Security Investor Protection Act ("SIPA"), 15 U.S.C. § 78*lll* (2). 4 COLLIER ON BANKRUPTCY, at ¶ 741.02, 741-5.

Purchasers of RFC thrift certificates were not "customers" as that term is used in 11 U.S.C. § 741 *et seq.* The defendants therefore were not securities "customers" under the Bankruptcy Code or the SIPA. *Cf. SEC v. Baroff,* 497 F.2d 280, 282-285 (2nd Cir.1974); *cf. Securities Investor Protection Corporation v. Executive Securities Corp.,* 423 F.Supp. 94, 96-98 (S.D.N.Y. 1976), *aff'd* 556 F.2d 98 (2nd Cir.1977). If an individual RFC creditor was not a "customer," then the debtor, RFC, would not be a stockbroker as defined by 11 U.S.C. § 101(46) with regard to its transactions with its creditors. 4 COLLIER ON BANKRUPTCY, ¶ 741.02, 741-10. This Court has already determined that purchasers of Republic thrift certificates were creditors with an unsecured claim. *See, e.g., In re Republic Trust & Savings Co.,* 59 B.R. 606, 608, 613 (Bkrtcy.N.D.Okla.1986) (analyzing the nature of the relationship between the debtor and holders of the thrift certificates issued by RFC's affiliate, Republic Trust & Savings Company, which were identical to the certificates issued by RFC characterizing the relationship as one of debtor-creditor). *See also* order confirming trustee's plan of reorganization of Republic Financial Corporation, entered March 21, 1986, wherein the claims of thrift certificate holders are allowed and treated as general unsecured claims in *pari passu* with all other general creditors such as trade creditors and the like.

11. Defendants have failed to prove the elements of fraud or tracing required to establish a constructive trust. *See In re Heston Oil Co.,* 63 B.R. 711, 714 (Bkrtcy.N. D.Okla.1986).

12. The trustee did not bring this action pursuant to any provision of the RFC plan of reorganization. Rather this action was commenced pursuant to the trustee's avoiding powers under §§ 547 and 550 of the Bankruptcy Code. *See* memorandum opinion dated April 9, 1987, in *R. Dobie Langenkamp v. Saied,* adversary proceeding no. 85-0302, p. 8.

13. Because there is no evidence of inequitable or improper conduct by the trustee, the successor trustee, or their agents, as a matter of law, the successor trustee is not estopped from pursuing the remedies available against the defendants in this adversary proceeding under §§ 547 and 550 of the Bankruptcy Code. In the alternative, and even assuming arguendo that the conduct complained of by defendants was proven, such conduct would not constitute a defense to an action for recovery pursuant to 11 U.S.C. §§ 547 and 550.

14. The plaintiff has established all of the elements necessary to avoid the transfers to defendants under 11 U.S.C. § 547 and to recover the transfers under 11 U.S.C. § 550. The Court concludes that plaintiff is entitled to recover from defendants the sum of $91,000.00 due to the avoidability of this transfer under the theories of law noted above.

15. Under the decisions interpreting 28 U.S.C. § 1961, prejudgment interest is recoverable in actions under §§ 547 and 550 from the date of demand for return of the transfer, or if no formal demand is made, from the date of the filing the adversary proceeding seeking the return. *See e.g., In re H.P. King Company, Inc.,* 64 B.R. 487 (Bkrtcy.E.D.N.C.1986); *In re AOV Industries, Inc.,* 62 B.R. 968 (Bkrtcy. D.D.C.1986); *In re Universal Clearing House Co.,* 60 B.R. 985 (Bkrtcy.D. Utah 1986). Based upon the records maintained by the United States Court Clerk for the Northern District of Oklahoma and pursuant to the directives of 28 U.S.C. § 1961, the interest rate applicable at the time of the filing of this adversary proceeding was 7.87 percent per annum. Plaintiff is therefore entitled to interest on the sum of

$91,000.00 at the rate of 7.87 percent per annum, compounded annually, from October 3, 1985 through the date of the entry of judgment herein. Thereafter, pursuant to 28 U.S.C. § 1961, interest on the total of the principal amount, plus all interest accrued at the prejudgment rate to that time, shall be calculated at the then applicable rate of interest pursuant to 28 U.S.C. § 1961, until paid.

16. The Court finds that judgment should be entered in favor of the plaintiff herein, and against defendants in the total sum of $91,000.00 in principal, together with interest accrued thereon from October 3, 1985 until the entry of judgment herein at the rate of 7.87 percent per annum, and thereafter accruing at the then applicable rate under 28 U.S.C. § 1961 until paid, together with costs incurred by plaintiff in connection herewith. Judgment shall be entered accordingly in conformity with Rule 7054, Rules of Bankruptcy Procedure.